**Barry Dean BRUNKEN, et al., Plaintiffs-Appellees,**

v.

**Carol LANCE and the Illinois Department of Children and Family Services, Defendants-Appellants,**

and

**Kendra Sue Brunken, Intervening Defendant.**

**No. 85–1854.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 26, 1986.

Decided Aug. 22, 1986.

As Amended Sept. 22, 1986.

---

Opinion superseded, 799 F.2d 337.

Rita M. Novak, Asst. Atty. Gen., Chicago, Ill., for defendants-appellants.

Frank H. Byers, Byers Byers & Greenleaf, Decatur, Ill., for plaintiffs-appellees.

Before CUMMINGS, Chief Judge, CUDAHY, Circuit Judge, and SARAH EVANS BARKER, District Judge.[*]

CUMMINGS, Chief Judge.

This case comes to us on appeal from the district court's award of nominal damages of $1 against defendant Carol Lance ("Lance") and in favor of plaintiff Barry Brunken, and the court's award of injunctive relief against defendant Department of Children and Family Services, State of Illinois ("DCFS") and in favor of plaintiff Garold Brunken. This case raises several important jurisdictional issues concerning federalism, as well as the meaning of "deprivation" under the due process clause of the Fourteenth Amendment. For the reasons set forth below, the decision of the district court is reversed.

I

Kerry Brunken is the daughter of Kendra Brunken and Barry Brunken. In early 1983, which is the time of the events relevant to the instant case, Kerry was three years old and resided with her mother Kendra. Her father Barry had visitation rights pursuant to a 1981 divorce decree. Barry lived near his parents, Garold and Jean Ellen Brunken, and Kerry often visited her paternal grandparents.

In early 1983, Kendra became concerned that Barry might be sexually abusing Kerry during her visits. On January 21, 1983, Kendra called Carol Lance, a social worker employed by DCFS, and expressed this concern. Both Lance and others proceeded to interview Kerry and concluded that Kerry had been sexually abused.

Barry shortly thereafter learned of Kendra's charges. More precisely, on January 28, John House, a DCFS employee, interviewed Barry and informed him of the charges of sexual abuse. That same day

Lance spoke to Barry and advised him of the charges; Barry then referred Lance to his attorney. Lance then spoke to Barry's attorney and advised him that she intended to proceed with an action in state court.

On February 10, Lance, on behalf of DCFS, petitioned the Circuit Court of the Fourth Judicial Circuit of Effingham County for an adjudication of wardship for Kerry. A shelter care hearing was scheduled for February 14. Lance claims that the State's Attorney told her that he would give Barry notice of that hearing. This testimony by Lance is uncontroverted. Nevertheless, Barry received no notice of this hearing. At the February 14 hearing the court found probable cause to believe that Kerry had been abused by her father Barry, and that it was urgent for her to be placed in shelter care. The court therefore placed Kerry in the custody of DCFS, with the understanding that she would remain with her mother Kendra. Barry was denied the privilege of unsupervised visits. The court initially set the adjudicatory hearing for March 8. Barry learned of the February 14 shelter care hearing on February 15, when he received a transcript of the hearing.

Barry subsequently filed a motion to set aside the temporary order entered at the shelter care hearing. The case was initially set for hearing on May 25, 1983. At that time Barry filed a motion for mental examinations of Kendra and Kerry, which was granted. The report of those examinations was filed with the court on November 14. Because of the examinations, the adjudicatory hearing was subsequently rescheduled and took place on December 1–2, 1983, and March 22–23, 1984. All parties were present with counsel at these times. On December 1, 1983, counsel for Barry argued to the circuit court his motion to set aside the temporary order. On April 10, 1984, the circuit court issued an opinion finding that Kerry had been sexually abused, and ordering DCFS to conduct an

[*] The Honorable Sarah Evans Barker, District Judge for the Southern District of Indiana, is sitting by designation.

investigation about Kerry, her mother Kendra, and her father Barry and paternal grandparents (if they should request custodial or visitation rights). The court also denied Barry's motion to set aside the temporary order.

On June 28, 1984, the circuit court entered an Order of Adjudication, denying Barry's motion to set aside the temporary order placing Kerry in the custody and guardianship of DCFS, and directed that further studies be made. On October 9, 1984, the court entered a Dispositional Order that placed custody and guardianship of Kerry in her mother Kendra. It also awarded Barry visitation rights, which required Kerry to stay in Garold and Jean Brunken's home during her visits.[1]

In the interim, while these proceedings were progressing in state court, Barry and his father Garold Brunken filed suit in federal court on July 20, 1983. In separate counts, Barry and Garold each alleged that Lance and DCFS violated their due process rights by not giving notice to them before taking protective custody of Kerry. They sought damages and "such other and further relief as the Court deems just and appropriate." On June 28, 1984, the district court ruled that Barry had been deprived of due process, and awarded nominal damages of $1 in favor of Barry and against Lance. With respect to Garold and his due process claims, the court held that unless DCFS petitioned the Circuit Court within 30 days, it would be permanently enjoined from interfering with Garold's right to unsupervised visits with his granddaughter.

## II

The Eleventh Amendment constitutionally limits the type of suit that a citizen may bring against its own State. At first glance, this is not an obvious result. The Constitution, as part of the federal court's diversity jurisdiction, originally allowed a State to be sued in federal court by a citizen of another State, and the language of the Eleventh Amendment does nothing more than repeal this type of diversity jurisdiction by prohibiting a suit against a State by a citizen of another State. Despite the appealing logic of this view, and its many adherents, see, *e.g., Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 125–26, 104 S.Ct. 900, 921, 79 L.Ed.2d 67 (Brennan, J., dissenting), citing Gibbons, *The Eleventh Amendment and State Sovereignty Immunity: A Reinterpretation,* 83 Colum.L.Rev. 1889, 1893–1894 (1983); Field, *The Eleventh Amendment and Other Sovereign Immunity Doctrines: Part One,* 126 U.Pa.L.Rev. 515, 538–540, and n. 88 (1978), the Supreme Court has consistently interpreted the Eleventh Amendment as also prohibiting a suit against a State by a citizen of that same State, and it is this view which must govern our disposition of the instant case.

■ The effect of the Eleventh Amendment is in part determined by the nature of the suit brought against the state. One type of suit is a personal-capacity suit

1. The Order of Adjudication entered by the Circuit Court of Effingham County was appealed by Barry Brunken, and the Illinois Appellate Court, Fifth District, reversed the Order of the Circuit Court and dismissed the petition for adjudication of wardship. The Appellate Court noted that under the pertinent section of the Juvenile Court Act, previous statements made by the child may be admitted into evidence, but such statements are not in themselves sufficient to support a finding of abuse or neglect if they are uncorroborated and not subject to cross-examination. In this case the crucial evidence that Kerry was abused by Barry was Kerry's alleged statements that she was abused. The Appellate Court held that the evidence fell short of the degree of proof required by the Juvenile Court Act because of the lack of corroboration of Kerry's statements. Four witnesses testified as to Kerry's out-of-court statements. Also, several expert witnesses testified regarding the behavior of sexually abused persons, and according to both Kendra and her mother the behavior of Kerry fit the patterns of an abused child. Nevertheless, the Appellate Court rejected all of this as insufficient corroboration of Kerry's statements. *In the Interest of Brunken,* 139 Ill. App.3d 232, 93 Ill.Dec. 730, 487 N.E.2d 397 (5th Dist.1985). The Illinois Supreme Court denied the State's petition for Leave to Appeal.

This action by the Appellate Court in no way affects the reasoning or the result reached by the Court in this case.

against a state official for actions taken by that official under the color of state law. This type of suit seeks to impose personal liability on the state official, and such an official can raise applicable personal immunity defenses. An award of damages in such a suit can be executed only against the official's personal assets. *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 3105–06, 87 L.Ed.2d 114. Although the official has the requisite nexus to the state in order for his actions to be labeled state action, the Eleventh Amendment does not affect such a suit.

■ A second type of suit is an official-capacity suit against a state official for actions taken under the color of state law. This type of suit "is, in all respects other than name, to be treated as a suit against the [government] entity." *Graham*, 105 S.Ct. at 3106. Any damage award must be satisfied by looking to the entity itself, rather than the official individually, and the official cannot assert any personal immunity defenses. *Id.* at 3105–06. This type of suit does implicate the Eleventh Amendment, but its precise impact on the suit depends on the nature of relief sought. If the action is for damages so that payment of a damages award requires payment from the State Treasury to remedy past wrongs, the Eleventh Amendment bars such an action, in the absence of a waiver by the State or a valid override by Congress. *Graham*, 105 S.Ct. at 3107; *Quern v. Jordan*, 440 U.S. 332, 337, 99 S.Ct. 1139, 1143, 59 L.Ed.2d 358. By contrast, under the landmark case of *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714, the Eleventh Amendment does not bar a citizen from seeking injunctive or declaratory relief against a state official "to conform [his] future conduct to the requirements of federal law." *Quern*, 440 U.S. at 332, 99 S.Ct. at 1143; see also *Graham*, 105 S.Ct. at 3107 n. 18. Moreover, monetary relief that is merely "ancillary" to injunctive relief is also not barred by the Eleventh Amendment. *Graham*, 105 S.Ct. at 3107 n. 19.

■ A third type of suit is a suit by a citizen directly against an entity of the state, without naming state officials as defendants. In this type of suit, regardless of the relief sought, the Eleventh Amendment bars the suit, unless the state has waived its immunity or Congress has overridden it. *Graham*, 105 S.Ct. at 3106 n. 14; *Pennhurst*, 465 U.S. at 100, 104 S.Ct. at 908; *Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114; *Gleason v. Board of Education of the City of Chicago*, 792 F.2d 76, 79 (7th Cir.1986). With these principles in mind, the nature of the suits filed in the instant case will be examined.

It is not perfectly clear what types of suits have been brought by Barry and Garold against Lance and DCFS. Paragraph 4 of Count I of the federal Complaint, which represents Barry's suit for relief and also serves as Garold's suit for relief under Count II, states as follows:

4. Each and all of the acts of the Defendants alleged herein were done by Defendants and each of them, not as individuals, but under the color and pretense of the statutes, regulations, customs and usages of the State of Illinois, and under their authority as employees of the State of Illinois.

At first glance this would appear to be an official-capacity suit rather than a personal-capacity suit, given the phrase "not as individuals." Yet the district court apparently construed the suits against Lance as at least in part personal-capacity suits, for the court extensively discussed the defense of qualified immunity as a bar to Lance's liability, and as previously discussed such a defense applies only in a personal-capacity suit. We recognize that complaints often fail to specify clearly whether a suit is an official-capacity suit, a personal-capacity suit, or both, and furthermore that the actual result of the proceedings is often the best evidence of the nature of the liability sought to be imposed. *Graham*, 105 S.Ct. at 3106 n. 14. Accordingly, the damage award in favor of Barry and against Lance will be construed as having been awarded

in a personal-capacity suit and thus not barred by the Eleventh Amendment.

■ However, the relief awarded to Garold by the district court presents a different result. Although Barry and Garold each sought both damages and injunctive relief against Lance and DCFS, the court awarded injunctive relief in favor of Garold and against DCFS *only,* without naming any individual state officials in its award of injunctive relief. Since it is clear that the state has not waived its immunity nor has Congress overridden it, this relief against a state agency is unconstitutional under the Eleventh Amendment. *Graham,* 105 S.Ct. at 3106 n. 14; *Pennhurst,* 465 U.S. at 100, 104 S.Ct. at 908; *Pugh,* 438 U.S. at 781–82, 98 S.Ct. at 3057; *Gleason,* 792 F.2d at 79. The mere presence of individual defendants in the case does not in any way validate the relief granted by the court below. *Pugh,* 438 U.S. at 781–82, 98 S.Ct. at 3057 (suit against individual Alabama officials, the Alabama Board of Corrections, and the State of Alabama; mandatory injunctive relief against the Alabama Board of Corrections and the State of Alabama "is unconstitutional because the Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies"). The injunctive relief ordered in favor of Garold and against DCFS must therefore be vacated.

### III

■ The timing of the federal suit and the state proceeding in the instant case raises the issue of whether the district court should have abstained under the principles of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (hereinafter referred to as *Younger* abstention). The basic principle of *Younger* abstention is that, absent extraordinary circumstances, a federal court should not interfere with pending state judicial proceedings. *Middlesex Ethics Commission v. Garden State Bar Association,* 457 U.S. 423, 431, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116; *Moore v. Sims,* 442 U.S. 415, 423, 99 S.Ct.

2371, 2381–82, 60 L.Ed.2d 994. In the *Younger* case itself, the Court held that, absent certain exceptional circumstances, a federal district court should not enjoin a pending state criminal proceeding. *Younger,* 401 U.S. at 53–54, 91 S.Ct. at 755. This principle, based on federalism and comity concerns, has been extended to civil proceedings when important state interests are involved. *Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.,* —— U.S. ——, 106 S.Ct. 2718, 2722–23, 91 L.Ed.2d 512 (1986); *Middlesex Ethics Commission,* 457 U.S. at 432, 102 S.Ct. at 2521; *Moore,* 442 U.S. at 423, 99 S.Ct. at 2377; *W.C.M. Window Co., Inc. v. Berardi,* 730 F.2d 486, 490 (7th Cir.1984). The importance of the state interest involved in a particular proceeding may be indicated by various factors. One such factor is the degree of similarity in nature between the state civil proceedings at issue and criminal proceedings. *Middlesex Ethics Commission,* 457 U.S. at 432, 102 S.Ct. at 2521. In the context of the instant case—a hearing to determine the custody of a child who was allegedly sexually abused by her father—the state is heavily involved in the proceedings. Under the pertinent Illinois statutes the state can file a petition which begins the process of undertaking a shelter care hearing and adjudicating custody of the child. Ill.Rev.Stat. ch. 37, ¶¶ 703–1, 704–1. Wholly apart from its role as provider of a forum to resolve a dispute between parents, the State has an independent interest—the welfare of the child. In a practical sense the State is a party to the proceedings in a fashion analogous to its role in a standard criminal proceeding. This role of the State, plus its very strong interest in the health and welfare of the child, see *W.C.M. Window Co., Inc.,* 730 F.2d at 490 (the protection of the health, safety, and morals of its population is the type of state interests involved in civil cases where *Younger* abstention has been applied), warrant the conclusion that *Younger* applies to the type of state proceeding at issue in the instant case. The Supreme Court has similarly held that *Younger* applies to the temporary removal

of a child in a child-abuse context. *Moore*, 442 U.S. at 423, 99 S.Ct. at 2377.

The only remaining inquiry to be made before deciding to apply the *Younger* doctrine here is whether the plaintiffs in the federal suit (Barry and Garold) had an adequate opportunity to raise their constitutional claims in the state proceeding. *Moore*, 442 U.S. at 430, 99 S.Ct. at 2380–2381. We hold that, at least with respect to Barry, he not only had such an opportunity, but he also took advantage of it. The state proceedings began February 14, 1983. Barry raised his due process claim and argued it to the state court on December 1, 1983. The state court denied Barry's motion in a letter opinion on April 10, 1984, and entered an Order of Adjudication to that effect on June 28, 1984. Nevertheless, Barry proceeded to file suit in federal court on July 20, 1983, raising his due process claim in that forum despite the pendency of the state court proceeding. Barry obviously had the chance to raise his constitutional claim in state court and did so. Nothing indicates that the state court was not an adequate forum to adjudicate his constitutional claim. A key aspect of *Younger* abstention which is particularly applicable to the instant case is that state courts are just as able to enforce federal constitutional rights as federal courts. *Middlesex Ethics Commission*, 457 U.S. at 431, 102 S.Ct. at 2521.

Having concluded that the doctrine of *Younger* abstention should apply to the instant case, the exceptions contained within the doctrine must be examined to determine if they warrant the district court's failure to have abstained in the instant case. One exception holds that intervention by a federal court is warranted where "the state proceeding is motivated by a desire to harass or is conducted in bad faith." *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 611, 95 S.Ct. 1200, 1212, 43 L.Ed.2d 482, quoted in *Moore*, 442 U.S. at 424, 99 S.Ct. at 2377. There is no indication whatsoever that the state civil proceeding in the instant case was in any way motivated by a desire to harass or was conducted in bad faith. A second exception allows federal intervention where the case involves such extraordinary circumstances that the plaintiff will suffer irreparable injury even though the state action was brought in good faith. *Moore*, 442 U.S. at 432–33, 99 S.Ct. at 2382. The case "must be 'extraordinary' in the sense of creating an extraordinarily pressing need for immediate equitable relief." *Kugler v. Helfant*, 421 U.S. 117, 124–25, 95 S.Ct. 1524, 1531, 44 L.Ed.2d 15, quoted in *Moore*, 442 U.S. at 433, 99 S.Ct. at 2382. The accidental failure of the state to give notice to Barry of a shelter care hearing on February 14, 1983, is simply not "extraordinary" in view of the fact that Barry found out about the hearing the next day, the adjudicatory hearings did not take place until December 1–2, 1983, and March 22–23, 1984, and the Order of Adjudication was not issued until June 28, 1984. We therefore hold that the district court should have abstained from adjudicating Barry's constitutional claim. We express no opinion about the propriety of the application of *Younger* abstention with respect to Garold's claim.

█ Alternatively, even if the district court was warranted in adjudicating Barry's constitutional claim of due process, in light of recent Supreme Court case law the claim was without merit. *Daniels v. Williams*, —— U.S. ——, 106 S.Ct. 662, 88 L.Ed.2d 662, teaches that an official does not "deprive" a person of life, liberty, or property, within the meaning of the Fourteenth Amendment, when an official's negligent act causes the unintended loss of or injury to life, liberty, or property. In the instant case, Lance claims that the State's Attorney told her that he would give notice to Barry of the February 14 shelter care hearing. The State's Attorney did not testify, nor is Lance's testimony controverted in any other fashion. Given this evidence, Lance's failure to notify Barry was at most negligent. Barry's claim that his due process rights were infringed therefore fails on this basis, wholly independent of *Younger* abstention. *Daniels*, 106 S.Ct. at 663.

For all of the above reasons, the district court's grant of injunctive relief against DCFS and damages against Lance is vacated, and the case is remanded for dismissal in accordance with this decision.