Carl WOODS, Plaintiff-Appellant,

v.

INDIANA UNIVERSITY–PURDUE UNIVERSITY AT INDIANAPOLIS, et al., Defendants–Appellees.

No. 92–2334.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 20, 1993.

Decided June 14, 1993.

---

John O. Moss, Moss & Walton, Indianapolis, IN (argued), plaintiff-appellant.

Albert J. Velasquez, Office of University Counsel, Indiana University, Bloomington, IN (argued), Michael E. Morkeh, Austin, Rowe & Hamilton, Indianapolis, IN, for defendants-appellees.

Before CUMMINGS and ROVNER, Circuit Judges, and SHADUR, Senior District Judge.[*]

SHADUR, Senior District Judge.

We deal here with a proposed Amended Complaint that seeks to bring individual defendants into a federal civil rights action—persons who were not named as defendants before the expiration of the normal two-year statute of limitations after they had engaged in the conduct that allegedly violated plaintiff's constitutional rights. Because the district court did not properly take into account the provisions of Fed.R.Civ.P. ("Rule") 15(c) in determining whether the Amended Complaint should relate back to the date of the original Complaint as to those newly-named defendants, the record was not fully enough developed to allow that question to be answered here. Accordingly we remand the case to the district court for that purpose.

*Legal Framework*

In a sharp departure from the old "sporting theory" of litigation, "[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and affect the principle that the purpose of pleading is to facilitate a proper decision on the merits" (*Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1958)). But competing considerations enter the fray when a lawyer's mistake (either of fact or of law) can prejudice the other side's defense. It may then become difficult or impossible to avoid a result dictated by the skill of counsel rather than by the merits of the client's case.

That tension of competing values is exemplified in Rule 15(c), which now reads in relevant part:

An amendment of a pleading relates back to the date of the original pleading when

(1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or

(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or

(3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(j) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.[1]

---

[*] Honorable Milton I. Shadur, Senior Judge for the Northern District of Illinois, is sitting by designation.

1. As we discuss later, Rule 15(c)(3) was amended to its current form on December 1, 1991, over five months before the district court's entry of

We have long left no doubt of the broad scope to be given Rule 15(c). As we said in *Staren v. American National Bank & Trust Co. of Chicago*, 529 F.2d 1257, 1263 (7th Cir.1976):

> It is well settled that the Federal Rules of Civil Procedure are to be liberally construed to effectuate the general purpose of seeing that cases are tried on the merits and to dispense with technical procedural problems. To this end, amendments pursuant to Rule 15(c) should be freely allowed.

And as we said in *Hill v. Shelander*, 924 F.2d 1370, 1375 (7th Cir.1991):

> Rule 15(c) ... recognizes that legitimate legal claims may not be squelched when a party mistakenly identifies a party to be sued within the meaning of Rule 15(c).

This case is on appeal from a grant of summary judgment in defendants' favor on the ground that the claims of plaintiff Carl Woods ("Woods") against them were found to be time-barred—as is plainly the case unless Woods can successfully invoke Rule 15(c). Woods' original Complaint, alleging violations of 42 U.S.C. §§ 1981, 1983, 1985 and 1986, was filed not against any individuals but rather against defendants that could only be construed as Indiana University and its police department. It took considerable time before Woods' counsel finally reshaped the Complaint to target only the ultimate individual defendants in their individual capacities. At that point the district court held that the Amended Complaint did not relate back and that the action against the individuals was outlawed by limitations.

On appeal Woods argues principally that the district court misapplied Rule 15(c) in refusing to relate the Amended Complaint back to the date of the original Complaint. We find that the impact of Rule 15(c) was not properly explored below and, for the reasons that follow, we therefore conclude that this action must be remanded to the district court for further proceedings.

the order of dismissal that is the subject of this

## Factual Background

Carl Woods joined the Indiana University Police Department as a police officer in March 1973. Over twelve years later (on July 17, 1985) other officers allegedly witnessed Woods wearing hospital uniforms ("scrubs"). Based on that information Lieutenant Frank Ingram signed an affidavit that served as support for a search warrant of Woods' home. During the search officers uncovered and seized such items as scrubs, marijuana and drug paraphernalia. On July 22, 1985 Indiana University suspended Woods, and then on July 26, 1985 it fired him.

On August 19, 1985 the Marion County prosecutor brought criminal charges against Woods. Those charges led to Woods' conviction on a Class A misdemeanor: possession of drug paraphernalia. However, because "no reasonable well-trained officer could have held an objectively reasonable belief the search was constitutional" (*Woods v. State*, 514 N.E.2d 1277, 1283 (Ind.App.1987)), the Indiana Court of Appeals threw out the conviction.

On July 15, 1987 Woods filed a federal civil rights action against "Indiana–University–Purdue University at Indianapolis and Indiana University Police Department of Indianapolis." That original Complaint and the accompanying summons were served on the University's Police Chief John Mulvey two days later. Because Indiana University enjoys the same Eleventh Amendment immunity as the State of Indiana itself (*Shannon v. Bepko*, 684 F.Supp. 1465 (S.D.Ind.1988)), on November 10, 1988 the district court granted defendants' motion for judgment on the pleadings. That dismissal was specifically stated to be without prejudice.

On December 12, 1988 Woods filed an Amended Complaint, naming as defendants George W. Combs, John Mulvey, Scott Evenbeck, Clifford Robinson, Maurice Smith, Clyde Rogers, Douglas Cox, Francis Ingram and Larry Propst, all of whom were employees of the University or its police department during 1985. On March 2, 1990 the district court, citing *Brunken v. Lance*, 807 F.2d

appeal.

1325, 1329 (7th Cir.1986), dismissed Woods' claims against those defendants in their official capacities.

■ Finally, in an opinion dated May 6, 1992 the district court granted summary judgment dismissing Woods' claims against those defendants in their individual capacities as time-barred. That ' decision—which resulted from the district court's reading of Rule 15(c)—engendered this appeal, over which we have jurisdiction pursuant to 28 U.S.C. § 1291. We review the district court's grant of summary judgment de novo (*Wilcox v. Niagara of Wisconsin Paper Corp.*, 965 F.2d 355, 357 n. 1 (7th Cir.1992)).

### Rule 15(c)

■ Once an action has been timely filed, fairness militates against allowing a limitations defense to an opposing party who knows of the action within the required time frame—even though that party is named as a defendant only later, in an amendment that arises out of the same conduct, transaction or occurrence addressed in the original pleading (see generally 6A Charles Wright, Arthur Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 2d* § 1496, at 64; id. § 1498, at 107 (2d ed. 1990 & 1992 pocket part)). That concept, which has its roots in the equitable notion that dispositive decisions should be based on the merits rather than technicalities, has been embodied since 1937 in Rule 15(c) (see Justice Stevens' dissent from the now-overturned decision in *Schiavone v. Fortune*, 477 U.S. 21, 38, 106 S.Ct. 2379, 2388, 91 L.Ed.2d 18 (1986) ("The principal purpose of rule 15(c) is to enable a plaintiff to correct a pleading error after the statute of limitations has run if the correction will not prejudice his adversary in any way."). As Justice Black commented in 1954 on an Order Adopting Revised Rules of the Supreme Court of the United States, 346 U.S. 945, 946:

> The principal function of procedural rules should be to serve as useful guides to help, not hinder, persons who have a legal right to bring their problems before the courts.

Consistent with its history and purpose, Rule 15(c) has uniformly been applied to relate back amendments that cure defective statements of jurisdiction or venue or that change the theory on which plaintiff seeks recovery.[2] Many courts (though not all[3]) have similarly employed Rule 15(c) to allow the relation back of amendments changing or adding parties so long as no prejudice will ensue (see, e.g., *Travelers Indem. Co. v. United States ex rel. Constr. Specialties Co.*, 382 F.2d 103, 106 (10th Cir.1967)).

But the path has not always been smooth. Most notoriously, *Schiavone* reached a result incongruous with Rule 15(c)'s equitable history and purpose.[4] Some background explanation is needed to demonstrate the anomaly posed by that decision.

If a plaintiff files a timely complaint, Rule 4(j) requires that each defendant be served with process within 120 days (unless that period is extended for good cause), on pain of dismissal if service has not been accomplished. Even though Rule 4(j) dictates a dismissal without prejudice, the dismissal effectively operates with prejudice if the statute of limitations has run in the meantime. However, a party properly named in the complaint and then timely served cannot escape on limitations grounds even if he or she

---

**2.** For a thorough analysis of Rule 15(c)'s history and application, see Harold S. Lewis, Jr., *The Excessive History of Federal Rule 15(c) and its Lessons for Civil Rules Revision*, 85 Mich.L.Rev. 1507 (1987).

**3.** For a discussion of decisions that led to the 1966 amendment of Rule 15(c), see Joseph Dornfried, Note, Schiavone v. Fortune, *Notice Becomes a Threshold Requirement for Relation Back under Federal Rule 15(c)*, 65 N.C.L.Rev. 598, 601 n. 23 (1987) ("Rule 15(c) was revised because some courts had refused to allow amendments that added new parties after the statute of limitations had run"); see also Benjamin Kaplan, *Con-*

*tinuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I)*, 81 Harv.L.Rev. 356, 407–410 (1967) (same).

**4.** For critical treatments of *Schiavone*—in addition to that contained in the Advisory Committee's Note to the 1991 amendment to Rule 15(c)—see, e.g., Joseph Bauer, Schiavone: *An Un-Fortune-ate Illustration of the Supreme Court's Role as Interpreter of the Federal Rules of Civil Procedure*, 63 Notre Dame L.Rev. 720 (1988); Robert Brussack, *Outrageous* Fortune: *The Case for Amending Rule 15(c) Again*, 61 S.Cal.L.Rev. 671 (1988).

or it has not learned of the lawsuit until after the running of the limitations period.

But if the plaintiff had named an improper defendant and had then cured that flaw only after the limitations period had run, in the absence of a relation-back principle the newly named defendant would be dismissed even though served with process before the Rule 4(j) 120–day period (measured from the filing of the original complaint) had elapsed. Thus a defendant served (say) just 10 days after expiration of the period of limitations would escape suit if the original complaint had contained a misnomer and if that defendant had then been correctly identified just one day after the statute had run, while a defendant who remained unaware of the case for up to 120 days (or more if that period were extended) after the running of the statute of limitations could not plead the statutory bar if the complaint had originally identified that defendant (see our discussion of that anomaly in *Diaz v. Shallbetter,* 984 F.2d 850 (7th Cir.1993)). Though some pre-*Schiavone* courts had rejected that result as out of synch with the purpose of Rule 15(c) (see e.g., *Ingram v. Kumar,* 585 F.2d 566, 571 (2d Cir.1978)), *Schiavone* read the rule as literally commanding that outcome.

■ *Schiavone* aroused pointed criticism not only from the very outset (see Justice Stevens' dissent, speaking for the Chief Justice and Justice White as well, especially 477 U.S. at 38–40, 106 S.Ct. at 2388–90) but thereafter. That criticism culminated in the 1991 amendment to Rule 15(c). That amendment, which was adopted specifically "to change the result in Schiavone ... with respect to the problem of a misnamed defendant" (Advisory Committee's Note to Rule 15(c)(3)), provides that if a plaintiff amends the complaint to correct the mistake by naming the proper party and if that party has received appropriate notice of the lawsuit within the time period prescribed by Rule 4(j) (rather than before the statute of limitations would otherwise have run),[5] the amendment relates back to the time that the original complaint was filed.

Because the record before us is unclear as to just when the individual defendants other than Chief Mulvey were first notified of Woods' lawsuit, we cannot tell whether Woods does or does not need to invoke the current version of Rule 15(c) to stay in court against those defendants. Thus it appears that to provide guidance to the district court on the required remand of the case, we must first consider whether the new or old version of Rule 15(c) applies to Woods' Amended Complaint.

■ We have not had occasion to consider whether and under what circumstances the 1991 revision to Rule 15(c) comes into play by a district court in actions that were pending before it on the effective date of that revision. To do so we are not called upon to decide which of the mixed signals that were explored at length in *Kaiser Aluminum & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990) ought to be followed where a new rule comes into effect only while the case is on appeal, *after* the district court has already disposed of the case: either the line of authority exemplified by *Bradley v. Richmond Sch. Bd.,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974) or that exemplified by *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988) (of which a bit more later).

In this instance the authority that promulgated the package of Rules amendments that included the Rule 15(c) revision—the Supreme Court itself—has been explicit in its April 30, 1991 order adopting those amendments and transmitting them to Congress under 28 U.S.C. § 2072 (134 F.R.D. 525 (emphasis added)):

> That the foregoing additions to and changes in the Federal Rules of Civil Procedure, the Supplemental Rules for Certain Admiralty and Maritime Claims, and the Civil Forms *shall take effect on December 1, 1991, and shall govern* all proceedings in civil actions thereafter commenced and, *insofar as just and practicable, all proceedings in civil actions then pending.*

---

5. As Rule 15(c)(3) reflects, the notice may either precede or follow the date of the amendment.

There is no question that on December 1, 1991 this was a "civil action[ ] then pending": It was not until five months later (on May 6, 1992) that the district court here dismissed both Woods' Amended Complaint and the action because the new pleading had brought the present defendants into the case after the statute of limitations had run. Hence the case stands in sharp contrast to the one that we dealt with in *Diaz*, where the district court's dismissal had *preceded* December 1, 1991 and the question was therefore whether our court should revive the action in a decision rendered after that effective date. That situation presented in bold profile the *Bradley–Bowen* conflict as to what law an *appellate* court should apply in the first instance, and *Diaz* chose the path of nonrevival as a matter of law.[6] That represents the law of our circuit, and if we were presented with a like set of facts here we would be called upon to affirm the district court's order of dismissal.

But in the wholly different situation before us—one that unquestionably involves a "civil action[ ] then pending" before the district court on December 1, 1991—we honor the Supreme Court's express directive, and we therefore hold that the district court should have determined whether it was "just and practicable" to determine the parties' rights and obligations under the new version of Rule 15(c). And as the Rule is written, that determination really merges with the twofold inquiry mandated by Rule 15(c)(3): whether within the Rule 4(j) period the newly-named defendant:

(A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the

merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.[7]

■ Given the district court's awareness of the 1991 amendment to Rule 15(c) (that was the version it quoted in its opinion), it is surprising that its analysis set forth the now-overruled *Schiavone* analysis in these terms:

For the present case, the rule provides that if additional defendants receive notice within the applicable statute of limitations, and would not be prejudiced in defending, the amended complaint adding defendants would relate back.[8]

Consequently the district court failed to consider whether the result as to any defendant would be different under the old and the new versions of Rule 15(c), or whether application of the new version of the rule would cause injustice as to any defendant and should not be applied for that reason. Those determinations are for resolution by the district court in the first instance and should be made on remand.

Whether or not it proves necessary to apply the new version of Rule 15(c) to provide another 120 days for notification to any defendant, there are a number of other issues that the district court must resolve. To be sure, there is no question that the amended complaint arose out of the same facts as did the original complaint, as both the old and new versions of Rule 15(c) require. Nor, properly understood, is there an issue as to whether plaintiff made a "mistake" as to the identity of the proper party for this Section 1983 action, or as to whether Woods would

---

**6.** *Diaz* stands alone among five Courts of Appeals in so ruling as a matter of law. Contrast *Hill v. United States Postal Service*, 961 F.2d 153, 155–56 (11th Cir.1992); *Skoczylas v. Federal Bureau of Prisons*, 961 F.2d 543, 545–46 (5th Cir.1992); *Bayer v. United States Dept. of the Treasury*, 956 F.2d 330, 334–35 (D.C.Cir.1992); and *Freund v. Fleetwood Enterprises, Inc.*, 956 F.2d 354, 363 (1st Cir.1992).

**7.** That same set of requirements existed in identical form under the earlier version of Rule 15(c) applied in *Schiavone*, with the only difference being that the earlier test made that inquiry as of the date that the statute of limitations ran out,

rather than giving the extra 120 days that have been provided by the amendment.

**8.** [Footnote by this Court] That statement is of course true as far as it goes: Under the 1991 amendment an amended complaint continues to relate back if notice was given within the limitations period and if no prejudice would result. But the district court's statement does not reflect the fact that under the amendment an amended complaint now *also* relates back if the party received notice within 120 days (or perhaps more) *after the limitations period ran* and if no prejudice would result.

have sued the proper party but for that mistake (cf., e.g., our opinion in *Hill*, 924 F.2d at 1374–78, and the explicit statements in *Hampton v. Hanrahan*, 522 F.Supp. 140, 144 (N.D.Ill.1981) and cases cited there ("mistake" as used in Rule 15(c) applies to mistakes of law as well as fact)).[9]

 Both versions of Rule 15(c) also require a court to determine what an omitted defendant having notice of a lawsuit "should have known" in consequence of the plaintiff's "mistake" (that is, in light of the plaintiff's failure to understand that the originally omitted defendant was a party that should have been sued in the first place). Where as in this case (and as was true in *Hill*) the plaintiff's mistake was one of *law*, the proper analysis of that factor poses a question much like that of determining qualified immunity in Section 1983 actions: whether the legal proposition at issue was "clearly established." As taught by *Harlow v. Fitzgerald*, 457 U.S. 800, 815–19, 102 S.Ct. 2727, 2736–39, 73 L.Ed.2d 396 (1982), *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) and their numerous progeny, for that purpose the inquiry is objective and not subjective—in essence, all public officials are presumed to know clearly established law, whether or not they have in fact ever cracked a law book. Here there can be no doubt that every state's sovereign immunity from, and all state employees' personal exposure to, Section 1983 liability for constitutional torts was clearly established when this lawsuit was filed (even though that realization came only belatedly to Woods' lawyer). And thus the objective question—what the omitted defendants "should have known" about whether they would have been named to begin with but for the mistake by Woods' lawyer, rather than the purely subjective question of what any individual defendant actually knew in that respect—permits of only one answer.

It is somewhat difficult to understand the path traveled by the concurrence on these issues of mistake and of what defendants should have known on that score. What it comes down to purely and simply is (1) that

it was the legal blunder of Woods' counsel—his "mistake"—that caused his continued (and fruitless) pursuit of state agencies rather than individual state actors as defendants in the case and (2) that the law ascribes to *everyone*, including the later-named individuals, the knowledge of the law that prescribes the potential Section 1983 liability of those individuals and not of the State itself—so that if it had not been for counsel's legal blunder, those individuals would have been the direct targets of the Complaint from the outset.

 Hence the issues that the district court must address on remand do not include the tautological existence of a presumptively known mistake of the type specified in Rule 15(c)(3)(B). This does not at all read the requirement out of Rule 15(c)—it is rather that the requirement is so readily satisfied in the situation presented here. But there are other questions that the district court will have to address on remand—questions that do not conflate with the unquestionable presence of a presumptively known mistake by Woods in not bringing the individuals into the case earlier. After all, the Rule's language *expressly* calls for a double inquiry: It separates as subparagraphs (A) and (B) the issues of nonprejudicial "notice" and of "mistake." As for the issue of "mistake," what has already been said here deals with that component of Rule 15(c). We believe that it unnecessarily muddies the waters to treat that question as inextricably intertwined with the questions of notice and prejudice under Rule 15(c). Certainly Rule 15(c)'s language does not call for such treatment in either the earlier or later incarnation of the Rule, even though the concurrence urges otherwise.

Before we turn to what are indeed entwined issues—those of notice and prejudice—one other point should be clarified. Because the district court mistakenly thought that the original complaint was filed on August 13, 1987 (instead the case was actually filed on July 15, 1987), it apparently perceived the lawsuit as having been filed more than two years after the operative

---

9. Parenthetically, the requirement referred to in this sentence of the text also forms part of both the old and the new versions of Rule 15(c).

events to begin with. But because the individual defendants must be looked at separately as to when each allegedly violated Woods' constitutional rights, it will be necessary to determine when the limitations time clock began to run as to each of them.

■ Now for the issues that Rule 15(c) does link together: the questions of "notice" and whether the quality of that notice was such as to negate "prejudice" to a newly-added defendant. Both the old and the new versions of Rule 15(c) say that amendments relate back only if the defendant received "such notice of the institution of the action that the [defendant] will not be prejudiced in maintaining his defense on the merits." [10]

In that respect the district court's analysis was incomplete. As to Chief Mulvey, the district court determined that service of the original complaint on him could not serve as proper notice. As to the other defendants, the district court concluded that Woods "notified the individual defendants on December 12, 1988, when [he] filed his First Amended Complaint."

Both of those conclusions misperceive the thrust and the impact of Rule 15(c). "Notice," as that term is employed in the rule, serves as the means for evaluating prejudice. As stated in Wright, Miller & Kane § 1497, at 91–93 (footnotes omitted):

It has been suggested that the requisite notice must be given by the content of the original pleadings. Other cases have taken a broader view and have held that it is sufficient if the opposing party was made aware of the matters to be raised by the amendment from · sources other than the pleadings, a position that seems sound since it is unwise·to place undue emphasis

on the particular way in which notice is received. An approach that better reflects the liberal policy of Rule 15(c) is to determine whether the adverse party, viewed as a reasonably prudent person, ought to have been able to anticipate or should have expected that the character of the originally pleaded claim might be altered or that other aspects of the conduct, transaction, or occurrence set forth in the original pleading might be called into question.

And both *Hill*, 924 F.2d at 1376–781 [11] and its reading of *Kirk v. Cronvich*, 629 F.2d 404 (5th Cir.1980) [12] could not have been more explicit that the statute of limitations does not insulate from suit an individual who did not initially receive service (or other notice) in the correct capacity, so long as no prejudice resulted.

For purposes of the analysis it must be kept in mind that the Rule's language also *expressly* contemplates the prospect of the retrospective application of an amended complaint to a defendant who was *not* named originally but who was added only later, when plaintiff or plaintiff's attorney realized that the defendant should have been named at the outset. And that of course includes (indeed, it would far more commonly involve) a defendant who was not named at all to begin with (as was true in *Kirk* in the Section 1983 context, and as is true in virtually every lawsuit out of the Section 1983 context), rather than a defendant who was named at the beginning but was originally sued in the wrong capacity.

On the first aspect of the linked issues of "notice" and "prejudice," Woods has claimed before us that all of the defendants conceded below that they did receive timely notice of the action. Whether or not that is so (a

---

**10.** Both *Wood v. Worachek*, 618 F.2d 1225, 1230 (7th Cir.1980) and *Norton v. International Harvester Co.*, 627 F.2d 18, 22 (7th Cir.1980), relied upon in the concurring opinion, properly look at whether the nature of the earlier notice of the lawsuit's pendency that was given to the newly added defendant was such as to prejudice its ability to defend. And to the extent that either of those cases could be read as taking a more restricted view of Rule 15(c) than our 1991 decision in *Hill*, they cannot of course narrow its scope—for *Hill*, like *Diaz*, is the law of our circuit.

**11.** *Hill* of course was an easier case. There the later named defendant was expressly referred to in the original complaint's allegations, though in a different capacity. But that difference is significant only as it bears upon the question of prejudice resulting from relation back.

**12.** *Kirk* held that relation back was proper where the amended complaint substituted the sheriff in his official and personal capacities for the originally named defendants—the municipality and its sheriff's department.

matter on which we are left with substantial doubt [13]), it seems plain that the district court did not analyze just when each individual defendant had notice of the suit or whether the nature of that notice was such as to each defendant that he would now be prejudiced in defending on the merits. Those determinations are obviously crucial under Rule 15(c) and, contrary to the intimation of the district court's opinion, cannot be made solely on the basis of when a party is named in a complaint. Circuit case law makes clear, for example, that relation back is proper "if a sufficient identity of interest exists between the new defendant and the original one so that relation back would not be prejudicial" (*Norton*, 627 F.2d at 21). And such an identity of interest is simply exemplary of the congeries of factors that may enter into a determination of the existence or the absence of prejudice.

As to defendant Ingram, the district court's holding plainly makes sense. Ingram's affidavit says that he left the police department before the original Complaint was filed and that he never received any notice of the suit before December 12, 1988. Woods has not identified any contrary evidence sufficient to defeat summary judgment. But as to each of the other defendants, neither the record on appeal nor the district court's opinion suffices to support the district court's holding. Instead the district court must determine both the accuracy of Woods' assertion as to when those defendants knew of his suit [14] and the factors that bear on the issue of prejudice.

In summary, on remand the district court should determine as to each defendant the date on which the limitations period began to run, the time and nature of the notice that he received and whether he would be prejudiced by relating back the Amended Complaint. Only after that is done can it be determined whether the requirements of Rule 15(c) have been met as to each defendant so as to enable Woods' claims to be dealt with on the merits.

#### Other Issues

Like most appellants, Woods has advanced some fallback arguments as well as a few other bones to pick with the district court's rulings. None is persuasive, nor do they deserve much expenditure of time. We address the only two that merit discussion.

#### 1. *Official Capacity*

Woods argues that even if his Amended Complaint does not relate back, both (1) his suit against the original defendants and (2) his claims against defendants in their official capacities were and are proper. As authority he directs this court to such cases as *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) and *Hafer v. Melo*, —— U.S. ——, 112 S.Ct. 358, 116

---

**13.** As support for that claim, Woods directs us to a statement made by defendants' counsel at the summary judgment hearing:

> With respect to the other defendants named in their individual capacities, I don't see that as a problem for the Court, because those people were notified about the complaint.

Neither that statement nor any other part of that hearing transcript provides any basis for discrediting defense counsel's assertion during oral argument that the complaint referred to in the quoted excerpt was the December 1988 Amended Complaint, which obviously could not have served to notify defendants of the suit either during the limitations period or during the 120 days provided for service of process in Rule 4(j). At oral argument Woods' counsel also maintained that the district court deprived him of the opportunity, which he had sought, to introduce evidence at the summary judgment hearing that all defendants knew of the suit. He also claimed that defendants' counsel had stipulated in writ-

ing that all defendants knew of the initial complaint, but that he had not included that document in the record on appeal because he thought that the transcript of the summary judgment hearing sufficiently demonstrated defendants' concession of notice. Counsel must recognize that when compiling a record on appeal it is better to include and not to need an item than to need it and not to have included it. Nonetheless, defendant's counsel did acknowledge during oral argument that he thought he had told defendant Propst about the initial Complaint during the limitations period.

**14.** One point bears special mention here. Woods suggests that relation back is proper because all the defendants share the same counsel. But there is nothing to suggest that those defendants were represented by that counsel within the time frame specified by revised Rule 15(c)—long before they were named in the Amended Complaint. Without that showing, Woods' argument fails (see *Wood*, 618 F.2d at 1230).

L.Ed.2d 301 (1991). That argument demonstrates a serious misunderstanding of Eleventh Amendment jurisprudence. Only a passing glance at those cases and at *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)—and at our decision in *Brunken,* 807 F.2d at 1328–29 as well—is needed to see that Woods' Complaint as originally filed failed to state a claim on which relief could have been granted.

2. *Statutes of Limitations*

 Except for 42 U.S.C. § 1986, which provides a one year limitations period, none of the civil rights statutes on which Woods rests his claims specifies a statute of limitations. Woods argues that the district court should have borrowed Indiana's five year limitations period governing actions against public officers. But we rejected that argument over six years ago as to Indiana-based Section 1983 actions *(Loy v. Clamme,* 804 F.2d 405 (7th Cir.1986) (per curiam)), and we have reconfirmed that ruling almost two years ago as to Section 1981 actions as well *(Coopwood v. Lake County Community Dev. Dept.,* 932 F.2d 677, 678–81 (7th Cir.1991)). We shall not revisit the issue now.

*Conclusion*

We conclude that the district court erred by refusing to relate back Woods' Amended Complaint without adequately addressing the interplay of Rule 15(c)'s requirements of notice and prejudice. That conclusion does not hobble defendants. If any of them received such insufficient or untimely notice that he would be prejudiced by relation back of the Amended Complaint, the Amended Complaint will be barred as to that defendant by the applicable limitations period. But conversely, if any defendant did receive a timely notice of such a nature that he would not be prejudiced by relation back of the Amended Complaint, he cannot rely on Woods' technical errors to avoid the consequences of his actions and must respond on the merits. We REVERSE the district court's order of dismissal, and this action is REMANDED for further proceedings consistent with this opinion.

ROVNER, Circuit Judge, concurring.

I agree that we must remand this case to the district court for further consideration of the amended version of Fed.R.Civ.P. 15(c). I also agree that the amended rule should apply retroactively to cases pending before the district court on the amendment's effective date so long as retroactive application is feasible and would not work an injustice. I write separately, however, because I believe that the majority's discussion of the crucial issues of notice, mistake, and prejudice under Rule 15(c) will foster confusion rather than clarity below.

Both the old and new versions of Rule 15(c) permit relation back to add a new defendant so long as the proposed defendant:

(A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

The majority resolves the second prong of this two-part inquiry, leaving only what it perceives to be the distinct questions of notice and prejudice for the district court on remand. I would also have left for the district court the question of whether Woods made a mistake concerning the identity of the proper parties and whether the individual defendants knew or should have known that, but for that mistake, they would have been named as defendants.

The majority first concludes that Woods made a legal mistake and that because of the nature of the mistake, the individual defendants necessarily knew or should have known of it. On the question of mistake, the majority writes:

Nor, properly understood, is there an issue as to whether plaintiff made a "mistake" as to the identity of the proper party for this Section 1983 action, or as to whether Woods would have sued the proper party but for that mistake (cf., e.g., our opinion in *Hill,* 924 F.2d at 1374–78, and the explicit statements in *Hampton v. Hanrahan,* 522 F.Supp. 140, 144 (N.D.Ill.1981)

and cases cited there ("mistake" as used in Rule 15(c) applies to mistakes of law as well as fact)).

(*Ante* at 886–87.) The majority then assumes that because the mistake was one of law, the individual defendants "should have known" that he intended to sue them:

> Where as in this case ... the plaintiff's mistake was one of *law,* the proper analysis of that factor poses a question much like that of determining qualified immunity in Section 1983 actions: whether the legal proposition at issue was "clearly established." As taught by *Harlow v. Fitzgerald,* 457 U.S. 800, 815–19 [102 S.Ct. 2727, 2736–39, 73 L.Ed.2d 396] (1982), *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) and their numerous progeny, for that purpose the inquiry is objective and not subjective—in essence, all public officials are presumed to know clearly established law, whether or not they have in fact ever cracked a law book. Here there can be no doubt that every state's sovereign immunity from, and all state employees' personal exposure to, Section 1983 liability for constitutional torts was clearly established when this lawsuit was filed (even though that realization came only belatedly to Woods' lawyer).

(*Id.* at 887.)

Although I agree that the concept of "mistake" can encompass mistakes of law, there is no support for the majority's matter-of-fact application of qualified immunity principles to Rule 15(c)'s "knew or should have known" requirement. The section 1983 cases cited elsewhere in the majority opinion make no reference to qualified immunity or to whether the legal proposition at issue was clearly established. *See Hill v. Shelander,* 924 F.2d 1370, 1375–78 (7th Cir.1991); *Kirk v. Cronvich,* 629 F.2d 404, 408–09 (5th Cir.1980). Nor do those cases view the "knew or should have known" inquiry as purely objective. Instead, both *Hill* and *Kirk* look to the allegations in the original complaints to determine what the defendants knew or should have known. *See Hill,* 924 F.2d at 1377–78; *Kirk,* 629 F.2d at 407–09; *see also Lovelace v. O'Hara,* 985 F.2d 847, 850–51 (6th Cir.1993).

If the majority's analysis were proper, the courts in *Hill* and *Kirk* would not have undertaken such a fact-based inquiry, for they could simply have assumed knowledge on the basis of a mistake relating to a clearly established legal principle. Yet neither *Hill* nor *Kirk* adopted this approach.

The majority's analysis effectively eviscerates the "knew or should have known" requirement, for subpart B of Rule 15(c)(3) is satisfied once the plaintiff makes a legal mistake with respect to a "clearly established" legal proposition. (*See ante* at 887.) Under the majority's approach, the knowledge requirement is thus met whenever the added defendant was aware of the lawsuit, regardless of whether the complaint named him or cited to any of his conduct. Simply because public officials are presumed to know that state entities have sovereign immunity and that state officials may be sued in their individual capacities for constitutional torts (*see ante* at 887) does not permit us to assume that state employees would know that whenever a state entity has been sued, a mistake has been made and they were the proper parties. That approach avoids any factual inquiry into whether the added party "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party." Fed.R.Civ.P. 15(c)(3)(B). I therefore find the majority's approach unfaithful to the language of the rule.

Finally, qualified immunity principles are ill-suited for application to Rule 15(c)'s "knew or should have known" requirement. Qualified immunity allows a public official to fulfill her duties free from potential liability except in those instances where the official violates a "clearly established statutory or constitutional right of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). In other words, the doctrine limits the potential liability of public officials to the extraordinary circumstance in which a clearly established right has been violated. The majority's application of similar principles here has the opposite effect—radically expanding exposure while limiting the available defenses of public officials who

were not originally named as defendants and who otherwise may not have suspected that their conduct was the subject of a lawsuit.

I also am uncomfortable with singling out the "mistake" prong of the Rule 15(c) inquiry for summary disposition. Our decisions interpreting the requirements of notice and mistake under the old version of the rule, which apply with equal force to the amended version, suggest a relationship between the two branches of Rule 15(c)—that is, we are much more likely to allow an amendment that cures a "mistake" where the defendant is already before the court in some other capacity or where he had notice that he was intended as a defendant.[1] *See, e.g., Hill*, 924 F.2d at 1376; *Wood v. Woracheck*, 618 F.2d 1225, 1229 (7th Cir.1980) ("amendment with relation back is generally permitted in order to correct a misnomer of a defendant *where the proper defendant is already before the court* and the effect is merely to correct the name under which he is sued. But a new defendant cannot normally be substituted or added by amendment after the statute of limitations has run.") (emphasis added).[2] Mere knowledge of Woods' lawsuit is therefore not sufficient. Rather, a plaintiff also must show that the individuals knew or should have known that they were intended defendants. The existence of a legal mistake on a clearly established legal proposition does not automatically satisfy this requirement.

Our decision in *Hill v. Shelander* is instructive. In that case, the plaintiff attempted to amend his complaint in order to sue a prison sergeant in his individual as opposed to his official capacity. 924 F.2d at 1371.

The defendant had notice of the suit because he was already before the court, although in a different capacity. *Id.* at 1375, 1378.[3] The court therefore concerned itself solely with the requirements of prejudice, mistake, and knowledge. In considering those issues, the court focused on the original complaint and found that its allegations should have notified the defendant that an individual capacity suit was intended. The original complaint in *Hill* had focused on the defendant's specific conduct, including the injuries he allegedly inflicted on the plaintiff. *Id.* Thus, the court found that the defendant "knew at all times that the suit against him was for the alleged constitutional injuries he personally inflicted on the plaintiff." *Id.* at 1377; *see also id.* at 1378 ("We reiterate that whether the suit was against him in his official or individual capacity, Sergeant Shelander always knew that the lawsuit was being brought against him."). Moreover, although the plaintiff purported to state an official capacity claim, he had not identified "an official policy or custom adopted by the county and carried out by Sergeant Shelander" on which to base such a claim. *Id.* at 1378. In short, because the complaint focused on the defendant's own conduct and did not allege an official policy or custom, it provided sufficient notice that the plaintiff intended to sue the defendant individually.

*Hill* therefore requires that we look to the original complaint to determine whether, despite the mistake, the individual defendants knew or should have known that they were intended as defendants. The majority here fails to consider the allegations of Woods' original complaint and relies instead on the

---

1. In my view, no clear distinction exists between the concepts of notice and what a defendant "knew or should have known." They are interrelated concepts that should not be separately analyzed. For example, after the majority has determined that the individual defendants "should have known" they were the proper parties, how is the district court to conclude that those defendants had inadequate notice? If they knew or should have known they were intended defendants, then presumably there was adequate constructive notice.

2. Similarly, a district court decision on which the majority relies (*see Hampton v. Hanrahan*, 522 F.Supp. 140, 143–44 (N.D.Ill.1981), also in-

volved the joinder of governmental entities that were named as defendants in the original proceeding and that clearly had notice of the action from its inception.

3. The majority in fact concedes that *Hill* was an easier case than this precisely because the defendant was named in the original complaint. (*See ante* at 888 n. 11.) Yet the majority finds that significant "only as it bears upon the question of prejudice resulting from relation back." (*Id.*) I think it also is relevant to the related question, as delineated in the rule, of whether the individual knew or should have known that he was intended as a defendant.

existence of a "presumptively known mistake" (*see ante* at 887)—that is, a mistake on a clearly established legal proposition such that the individual defendants should have known that they were the proper parties. In contrast to that in *Hill,* this complaint makes *no mention* of the individual defendants, let alone of their specific conduct.[4] Instead, the complaint broadly alleges that the defendant entities violated plaintiff's rights by discriminating against him on account of his race. For example, the complaint seeks a declaratory judgment, as well as preliminary and permanent injunctions, prohibiting the termination of Woods' employment. (Complaint ¶ 3.) It does not identify particular actors other than the university entities themselves. Even the majority concedes that the original complaint "was filed not against any individuals but rather against defendants that could only be construed as Indiana University and its police department." (*Ante* at 883.) The original complaint also differs from the *Hill* complaint in its use of traditional official capacity language—that of official custom and policy. The complaint's prayer for relief, for example, speaks in terms of "unlawful practices and policies" which have resulted in a violation of plaintiff's constitutional rights. (Complaint at 5.) This too suggests an intention to assert official capacity claims against the named entities, as opposed to claims against unnamed individuals.[5] In view of these policy allegations and the failure to mention specific individuals or individual conduct, Woods' original complaint neither would nor should have put the individuals on notice that but for the mistake, they would

have been named as defendants in the original complaint.[6]

Although the majority shies away from the allegations in the original complaint, it briefly touches on the knowledge problem in discussing notice. (*See ante* at 888.) The majority suggests that even if the original pleading did not reveal the nature of the intended amendment, it is sufficient that the defendant " 'was made aware of the matters to be raised by the amendment from sources other than the pleadings.' " (*Id.* at 888 (quoting 6A Charles Wright, Arthur Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 2d* § 1497, at 92 (2d ed. 1990)).)[7] I agree, for example, that if Woods had notified one of the university police officers within the limitations period or within the 120–day period for service of process that he intended to name the individual officer as an additional defendant (*e.g.,* in the course of a deposition), there would be no question that the officer received adequate notice and possessed the requisite knowledge regardless of the nature of the allegations in the original complaint. But I have seen no evidence to that effect in this record. At most, Woods has suggested that the individual defendants knew of the existence of the original lawsuit against the university entities. In light of the original complaint's general allegations, however, knowledge of the lawsuit proves very little because it would not have caused a reasonably prudent police officer to expect to be named as a defendant. Our precedents

4. Although the first and second amended complaints mention and identify the individuals, they do not define individual roles in the allegedly discriminatory conduct.

5. In fact, Woods' counsel acknowledged at oral argument that he knew the identities of the individual defendants when he filed the original complaint. Thus, if Woods had intended to sue the individuals rather than the entities, he could have done so at that time. *See Lovelace,* 985 F.2d at 850.

6. Yet the majority's "objective" rule would sweep in these defendants anyway simply because sovereign immunity is a clearly established legal principle. As I have explained above, I find this approach incompatible with the language of the rule and with the case law.

7. Although used by the majority here to support the addition of a new party defendant, the quoted passage actually refers to a situation in which a plaintiff has significantly altered its claims against a defendant who is already before the court. *See* 6A Wright, Miller & Kane § 1497, at 84. The rationale for such a rule in the context of a significantly altered claim or defense is that the adverse party already knows that a particular transaction or occurrence is at issue and that discovery may be conducted on all of its different aspects. *Id.* Thus, the party would not be prejudiced if the nature of the claim is subsequently altered. This is not necessarily so if claims are added against completely new defendants who may have had no reason to expect that they might be added to the case.

require something more than simple knowledge of the lawsuit.

In *Wood v. Worachek*, 618 F.2d 1225, 1228 (7th Cir.1980), for example, the plaintiff alleged that certain police officers and city officials, as well as other unidentified police officers, had conspired to deprive him of his constitutional rights. When the plaintiff subsequently amended his complaint to substitute actual police officers for the previously unidentified defendants, the district court found the new claims barred by the statute of limitations. On appeal, we observed that although one of the added defendants was deposed by the plaintiff's counsel within the limitations period, so that he had knowledge of the lawsuit and that it somehow involved his conduct, the officer "did not receive such notice that he would not be prejudiced in defending the suit on the merits." In other words, the deposition did not place the officer on notice "that he would be named as a defendant in the action." *Id.* at 1230. Thus, in *Wood,* the officer knew of the incident at issue and that a lawsuit had been filed, yet we declined to apply Rule 15(c) because he did not know that he would be named as a defendant.

*Norton v. International Harvester Co.*, 627 F.2d 18 (7th Cir.1980), also supports the view that notice of the lawsuit alone is insufficient. In *Norton,* the plaintiff filed suit against International Harvester ("IH") when her husband died in an accident involving an IH tractor-trailer. After the statute of limitations expired, the plaintiff amended her complaint to add as a defendant the gear division of TRW, Inc. ("TRW"), which had manufactured the steering gear mechanism in the IH tractor-trailer. We did not apply the relation-back doctrine to this additional claim, despite the fact that TRW had knowledge of a potential problem with its steering mechanism and that a negligence action had been filed against IH. Because the plaintiff's original pleadings had focused on IH and failed to mention TRW or its alleged negligence, we concluded that "neither the initial pleadings nor the fact that TRW conducted an inspection of the gear mechanism provided TRW with sufficient notice that it might be named as a defendant." *Id.* at 21.[8]

In sum, I agree that the district court must consider anew the issues of notice and prejudice. I would also leave for the district court the related questions of mistake and knowledge. Depending on the nature of any notice provided here, *Norton* and *Wood* may be controlling, for they clearly hold that knowledge of the lawsuit alone is insufficient.[9] My overriding concern, and the concern of those cases, is not whether the individual defendants merely had notice of the lawsuit, but whether each defendant had notice sufficient to indicate to a reasonably prudent person that he eventually might be named as a defendant.

---

8. The majority obliquely suggests that *Wood* and *Norton* were somehow limited by our later decision in *Hill,* and that it is *Hill,* and not the earlier decisions, that we must follow here. (*See ante* at 888 n. 10.) The majority alludes to a conflict that does not exist. The approach in *Hill* is perfectly consistent with our earlier decisions, for as in *Wood* and *Norton,* the *Hill* court considered subjective facts in determining what the defendant knew or should have known. In fact, not only did *Hill* not break from *Wood,* but it extensively relied on *Wood* 's discussion of Rule 15(c). *See Hill,* 924 F.2d at 1376. It is the majority's decision here, not that in *Hill,* that diverges from our earlier interpretations of the rule.

9. Unlike the majority, I do not believe the relation-back doctrine can be applied here solely based upon an "identity of interest" between the university entities and the individual defendants.

(*See ante* at 889.) The identity of interest doctrine is most often applied to parent and subsidiary or closely related corporations. *See Torres Ramirez v. Bermudez Garcia,* 898 F.2d 224, 229 (1st Cir.1990); *see also Norton,* 627 F.2d at 21. If it were to apply to lower-level employees whenever a supervisory entity or official is named a defendant, then presumably it would have applied to the claim against the added officer in *Wood v. Worachek, supra.* It did not. 618 F.2d at 1230. The nature of a custom or policy claim against a governmental entity is far removed from an individual capacity claim against lower-level employees. Although supervisory officials such as Chief Mulvey may have had reason to monitor the action against the entities (*see Kirk,* 629 F.2d at 408 n. 4), it is unlikely that lower-level employees would have had the same responsibility or incentive, especially when they were neither named as defendants nor mentioned anywhere in the original complaint.