**Paula HARRIS and Kim Walton, Plaintiffs,**

v.

**UNION PACIFIC RAILROAD, Defendant.**

**No. 96 C 3442.**

United States District Court, N.D. Illinois, Eastern Division.

Feb. 7, 1997.

---

William David O'Donaghue, Chicago, IL, for Plaintiffs.

Daniel Richard LaFave, Union Pacific R. Co., Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

This matter is before the court on defendant's motion to dismiss plaintiff's complaint for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). For the reasons discussed hereafter, defendant's motion is granted.

## I. BACKGROUND

Plaintiffs Paula Harris and Kim Walton are employed by defendant Union Pacific Railroad ("Union Pacific") as customer service representatives. Prior to their employment with Union Pacific, plaintiffs were employed by the Chicago and Northwestern Railway Company ("CNW"). CNW recently merged with Union Pacific; Union Pacific was the surviving company. The merger was approved by the Interstate Commerce Commission ("ICC").[1]

As a result of the merger, Union Pacific offered a "separation program" to eligible clerical employees who did not want to relocate to other locations. The separation program was limited to a maximum of 300 employees—preference determined by seniority dates. The separation program was part of the "implementing agreement" negotiated between Union Pacific, CNW, and the Transportation Communications International Union.[2] Pursuant to the terms of the separation program. in exchange for their resignation, eligible employees could elect a lump sum payment of $60,000.

Several conditions, however, had to be met before one could qualify as an eligible employee and thus take advantage of the sepa-

---

**1.** As of January 1, 1996, the ICC was replaced by the Surface Transportation Board. The authority vested in the ICC to consider mergers, consolidations, and other combinations of rail carriers is now vested in the Surface Transportation Board. For purposes of this order, the court will act as if the ICC still exists.

**2.** Some of the facts were taken from defendant's motion, not plaintiffs' complaint. Plaintiffs do not challenge them. On a motion to dismiss, when determining whether jurisdiction exists, the court may look beyond the allegations of the complaint and view whatever evidence has been submitted. *Schaefer v. Transp. Media, Inc.,* 859 F.2d 1251, 1253 (7th Cir.1988); *Roman v. U.S. Postal Serv.,* 821 F.2d 382, 385 (7th Cir.1987).

ration program. One of the conditions is that the employee must be an "active employee," *i.e.*, an employee not on leave of absence. If the employee was on leave of absence, he could become "active" by returning to work within twenty days of the posting of the separation program.

At the time the notice was posted, plaintiffs were on maternity leave. Nevertheless, plaintiffs submitted application forms for the separation program. Because they were on maternity leave, they did not qualify as "active employees," thus, their applications were denied.

Plaintiffs filed a four-count complaint alleging that Union Pacific's act of denying their applications for the separation program because they were on maternity leave violated: Count I—the Family and Medical Leave Act ("FMLA"). 29 U.S.C. § 2601, *et seq.*; Count II–the Pregnancy Discrimination Act ("PDA"), 42 U.S.C. § 2000e(k); and Count III–the Employee Retirement Income Security Act ("ERISA"). 29 U.S.C. § 1001, *et seq.* In Count IV, Harris brings a breach of contract action against Union Pacific.

## II. *DISCUSSION*

Union Pacific seeks dismissal of Counts I through IV on the ground that the court lacks jurisdiction to hear the counts. The court will analyze the dispute in two parts: the first part will be concerned with Counts I through III (the FMLA, the PDA, and the ERISA claims); the second part will be concerned with Count IV (Harris' breach of contract claim).

### A. *The FMLA, the PDA, and the ERISA (Counts I, II, and III)*

■ Because the merger was of the type approved by the ICC, Union Pacific argues, citing 49 U.S.C. § 11341(a),[3] that all questions relating to the merger rest in the *exclusive* jurisdiction of the ICC. Further, Union Pacific argues that the separation program was incident and necessary to the ICC approved merger; accordingly, any questions regarding the program should be brought

pursuant to the arbitration procedures (outlined in the "Master Merger Implementing Agreement") before the ICC.

Plaintiffs, relying on the plain language of § 11341(a), argue that the ICC has jurisdiction only over questions that are "necessary to let [the] person carry out the [approved merger] transaction." Since the applicability of the FMLA, the PDA, and the ERISA in the instant situation is not necessary to carry out the approved merger transaction, plaintiffs argue that § 11341(a) is inapplicable and thus the ICC does not have jurisdiction over the dispute.

The court agrees with Union Pacific.

Pursuant to § 11341(a):

The authority of the Interstate Commerce Commission under this subchapter is exclusive. A carrier or corporation participating in or resulting from a transaction approved by or exempted by the Commission ... is exempt from the antitrust laws and from all other law, including State and municipal law, as necessary to let that person carry out the transaction....

As noted recently by the Supreme Court. "the immunity provision in § 11341 means what it says: A carrier is exempt from *all laws* as necessary to carry out an ICC-approved transaction." *Norfolk & Western Rw. Co. v. Am. Train Dispatchers' Ass'n,* 499 U.S. 117, 129, 111 S.Ct. 1156, 1163–64, 113 L.Ed.2d 95 (1991). Indeed, the language exempting carriers from "all other law" is clear, broad, unqualified, and indicates no limitation. *Id.* at 128–29, 111 S.Ct. at 1163–64. In short, the reason for the broad exemption is to ensure that the efficiencies of merger or consolidation are maintained and not defeated by delays resulting from potential legal disputes. *See id.* at 133, 111 S.Ct. at 1165.

■ Thus, it follows that the ICC-approved merger and separation agreement between Union Pacific and CNW were exempt from the provisions of the FMLA, the PDA, and the ERISA. However, "the exemption

---

**3.** Section 11341 no longer exists. Section 11321(a) has essentially taken its place. But, during the relevant time period of this litigation § 11341(a) was in effect. Plaintiffs do not dispute that an analysis of § 11341 is necessary to resolve the instant dispute.

applies only when *necessary* to carry out an *approved* transaction." *Id.* at 127, 111 S.Ct. at 1162–63. Accordingly, if the condition precedent of active employment—which prevented plaintiffs from taking advantage of the lump-sum payment—was *not* necessary to carry out the approved merger, the exemption does not apply.

Thus, assuming Union Pacific's denial of plaintiffs' application for the separation program violated the FMLA, the PDA, and/or the ERISA because they were on maternity leave and thus failed to meet the condition precedent of active employment to qualify for the lump sum payment, the issue is whether such condition was necessary to carry out the approved transaction.

Plaintiffs want the court to decide the issue. Union Pacific says the court has no jurisdiction to decide the matter; rather, the issue of what was necessary to carry out the approved merger resides in the exclusive jurisdiction of the ICC—now the Surface Transportation Board. Neither party cites any case law directly supporting their respective positions.

The court, however, located an analogous opinion from the Ninth Circuit. In *Ry. Labor Executives' Ass'n v. Southern Pacific Transp. Co.*, 7 F.3d 902 (9th Cir.1993), a dispute erupted between the union and the railroads following an ICC-approved merger regarding the implementation of maintenance operations. The union claimed that the dispute must be resolved by resorting to the provisions of the Railway Labor Act ("RLA"). *Id.* at 904. The railroads asserted that they were exempted from the provisions of the RLA as a result of the applicability of § 11341(a). *Id.* The union countered that argument by responding that the post-merger changes in maintenance operations were not necessary to carry out the merger, thus, § 11341(a) was inapplicable. *Id.* at 904–05.

The Ninth Circuit concluded that the union's claim must be raised before the ICC, not in the federal district court—*i.e.*, the ICC must determine what was necessary to carry out the merger. *Id.* at 905–06 ("It follows

... that where a railroad which has been a party to an ICC-approved merger claims that certain proposed actions are incident to that merger and exempt ... under § 11341(a), *the ICC has exclusive authoring to resolve a challenge to these claims.* ") (emphasis added); *see Am. Train Dispatchers Ass'n v. I.C. C.*, 26 F.3d 1157, 1164 (D.C.Cir.1994). The court agrees with the Ninth Circuit's holding and concludes that the determination of what was necessary to carry out the approved merger resides within the exclusive jurisdiction of the ICC pursuant to 11341(a), *i.e.*, the court lacks jurisdiction to resolve this dispute.

## B. *Breach of Contract (Count IV)*

In Count IV, Harris apparently claims that Union Pacific initially approved her application for the separation program. Subsequently, Union Pacific learned that Harris was ineligible for the separation program because she failed to satisfy the condition precedent of active employment, thus, it rejected her application. Harris apparently contends that Union Pacific's original acceptance of her application resulted in a binding contract and Union Pacific's subsequent rejection of her application breached this contract.

Harris offers two arguments as to why the breach of contract action should remain in this action: first, Harris argues that the contract was entered into after the merger, thus, § 11341(a) does not apply; second, Harris argues that the contract has no impact on the merger, thus, § 11341(a) does not apply. The court does not find either of Harris' arguments persuasive.

Regarding the first argument, the contract was allegedly entered into on September 6, 1995, but the official date of the merger was not until October 1, 1995. Accordingly, Harris' argument is factually erroneous and thus without merit.[4]

With respect to Harris' second argument, the court cannot conclude that § 11341(a) is inapplicable. The separation agreement—

**4.** Regardless, the court does not believe that the date of the transaction has anything to do with resolving the issue. Section 11341(a)'s exemp-

tion can extend to any approved transaction regardless of the date of such transaction.

which is, of course, part of the implementing agreement that was negotiated between Union Pacific, CNW, and the union that represented Harris in this ICC-approved merger—limited the number of available spots to 300 eligible employees. Harris, of course, did not qualify as an eligible employee. Assuming a contract was entered into between Harris and Union Pacific, the contract would be in direct violation of the separation agreement. Assuming the separation agreement is necessary to carry out the merger—consistent with the above holding; such a determination resides in the exclusive jurisdiction of the ICC—it appears to the court that Union Pacific's breach of the contract is likely exempted under the provisions of § 11341(a).

### III. CONCLUSION

Based on the court's analysis, Counts I, II, III, and IV are dismissed for lack of jurisdiction.