Paula L. **HARRIS** and Kim D. **Walton,**
Plaintiffs–Appellants,

v.

**UNION PACIFIC RAILROAD,**
Defendant–Appellee.

No. 97–1501.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 1, 1997.

Decided April 9, 1998.

William D. O'Donaghue, Chicago, IL, Reed Millsaps (argued), C.R. Vince and Associates, Northbrook, IL, for Plaintiffs–Appellants.

Daniel R. LaFave (argued), Union Pacific Railroad Company, Law Department, Chicago, IL, for Defendant–Appellee.

Before EASTERBROOK, MANION, and EVANS, Circuit Judges.

EASTERBROOK, Circuit Judge.

In 1993 the Union Pacific Railroad sought permission of the Interstate Commerce Commission to acquire the Chicago and North Western Railway. The railroads contemplated that approximately 800 employees would be transferred after the merger and that 900 jobs would be abolished. The Commission gave its assent on February 21, 1995, subject to the standard *New York Dock* conditions for treatment of employees adversely affected by the transaction. *New York Dock Ry.–Control*, 360 I.C.C. 60 (1979), affirmed under the name *New York Dock Ry. v. United States*, 609 F.2d 83 (2d Cir.1979). See also *In re Chicago, Milwaukee, St. Paul & Pacific Ry. Co.*, 799 F.2d 317, 328–29 (7th Cir. 1986). But the Commission added that labor and management could negotiate different

conditions "in a labor agreement entered into prior to consolidation, in which case protection shall be at the negotiated level, subject to our review to assure fair and equitable treatment of affected employees." *Union Pacific R.R.–Control–Chicago & North Western Transportation Co.*, Fin. Dkt. 32133, —— I.C.C.2d ——, 1995 ICC Lexis 37 at *279. In July 1995 the parties reached just such an agreement. Under Letter of Understanding No. 2 accompanying the Master Merger Implementing Agreement between the carriers and their unions, up to 300 clerical employees could elect separation allowances in lieu of involuntary transfers or layoffs. Eligibility for and the amount of these allowances depended on seniority, with a proviso that only employees at work when the agreement was announced would be eligible. An employee on leave had to return to work within 20 days to be eligible for a separation allowance. No one sought the Commission's review of the labor agreement, and the merger took place on October 1, 1995.

■■■ When the terms of the labor agreement were posted, Paula Harris and Kim Walton were on maternity leave. Neither returned within 20 days, but both applied for separation benefits anyway. Had they been at work, Harris would have been eligible for $60,000 and Walton for $35,000. The railroad turned Walton down, and it did the same to Harris after initially granting her application in error. Both filed charges of sex discrimination under the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k) (part of the Civil Rights Act of 1964). After obtaining leave to sue, they began this case and included two claims that do not require a prior administrative charge: the Family Medical Leave Act and the Employee Retirement and Income Security Act. Harris also sought relief on the theory that the railroad broke a contract formed when it initially accepted her application. The contract claim encounters trouble under the principle that employers may not strike private bargains with employees but must respect the terms of collective bargaining agreements. *J.I. Case Co. v. NLRB*, 321 U.S. 332, 64 S.Ct. 576, 88 L.Ed. 762 (1944). It is not clear what the ERISA claim might be; the statute does not regulate the substance of severance-ben-efit plans. See *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 12, 107 S.Ct. 2211; 2217–18, 96 L.Ed.2d 1 (1987). Unions and employers are free to set their own terms when the statute is silent, see *Lockheed Corp. v. Spink*, 517 U.S. 882, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996); *Johnson v. Georgia–Pacific Corp.*, 19 F.3d 1184 (7th Cir.1994); and none of the benefits promised in this plan has been withheld. Invocation of the Pregnancy Discrimination Act also is problematic. That statute requires the employer to *ignore* pregnancy, which Union Pacific did when treating pregnancy leave the same as sick leave, vacation leave, and every other kind of leave. Under the Pregnancy Discrimination Act a firm need not make accommodations for pregnant workers. *Troupe v. May Department Stores Co.*, 20 F.3d 734 (7th Cir.1994). Cf. *United Auto Workers v. Johnson Controls, Inc.*, 499 U.S. 187, 111 S.Ct. 1196, 113 L.Ed.2d 158 (1991). Yet plaintiffs' suit depends on a claim that the firm had to treat pregnancy leave more favorably than leave for other reasons. Perhaps the Family Medical Leave Act supplies the missing element in plaintiffs' case—though the statute seems to create an entitlement to unpaid leave followed by a return to the job, see 29 U.S.C. § 2612, rather than a right to enjoy leave followed by severance benefits. But the district court did not reach this question. Instead the judge concluded that the Commission's approval of the merger foreclosed all of plaintiffs' claims, unless they could persuade the Commission's successor, the Surface Transportation Board, to authorize the litigation. 952 F.Supp. 598 (1997).

At the time the Commission approved the merger, 49 U.S.C. § 11341(a) provided:

The authority of the Interstate Commerce Commission under this subchapter is exclusive. A carrier or corporation participating in or resulting from a transaction approved by or exempted by the Commission ... is exempt from the antitrust laws and from all other law, including State and municipal law, as necessary to let that person carry out the transaction....

Section 11341(a) was repealed effective January 1, 1996, as part of the legislation that abolished the Commission and transferred some of its duties to the Board. Pub.L. 104–88, 109 Stat. 838 (1995). A substantively identical provision now appears at 49 U.S.C. § 11321(a). *Norfolk & Western Ry. v. American Train Dispatchers Ass'n,* 499 U.S. 117, 111 S.Ct. 1156, 113 L.Ed.2d 95 (1991), holds that the word "all" in the former § 11341(a) must be taken literally, and that approval of a merger therefore relieves the railroad of labor agreements that would block completion of the transaction—for labor law and contract law are in the category "all other law". Civil rights laws too are in the set of "all other law", the district judge concluded, and therefore give way "as necessary to let [the railroad] carry out the transaction". Cf. *NAACP v. American Family Mutual Insurance Co.,* 978 F.2d 287, 294–95 (7th Cir.1992). Although the Commission did not declare it "necessary" to foreclose application of employment-discrimination laws, relying on *Railway Labor Executives' Ass'n v. Southern Pacific Transportation Co.,* 7 F.3d 902 (9th Cir.1993), the district judge concluded that only the Board may determine which other laws it is "necessary" to set aside. The court therefore dismissed the case and invited plaintiffs to take their claims to the Board, as the Commission's successor.

One problem with this approach is that the Commission did not say "boo" about this labor agreement, let alone conclude that it was "necessary" to displace the civil rights laws in order to make this merger work. After imposing the *New York Dock* conditions, the Commission invited the parties to replace them with something they preferred. A labor agreement was reached in July 1995, a month after the Commission entered its terminating order in the consolidation proceeding. See 1995 ICC LEXIS 157 (June 16, 1995). The return-from-leave condition that plaintiffs say is unlawful was adopted by labor and management on their own after the Commission finished its work. It did not invite or authorize the parties to violate any laws—for having approved the merger with *New York Dock* labor protection conditions,

it could not have thought any particular alternative "necessary".

Nothing in the ninth circuit's *Southern Pacific* decision says or implies that only the Commission or Board may opine on the legal effect of agreements reached after the merger has been approved. At all events, *Southern Pacific* does not represent this circuit's approach to the relation between Commission and court. *Burlington Northern R.R. v. United Transportation Union,* 862 F.2d 1266, 1277–81 (7th Cir.1988), holds that a court has jurisdiction to decide which other laws it is "necessary" to displace. If the Commission says that it is "necessary" for some law to give way, then we review its decision to determine whether it was arbitrary, capricious, or an abuse of discretion. If the Commission implies (but does not quite say) that some other law had to yield, then perhaps a court should refer the subject to the agency under the doctrine of primary jurisdiction. See *Railway Labor Executives' Ass'n v. United States,* 987 F.2d 806, 815 (D.C.Cir.1993). But if the agency says nothing, a post-merger dispute is resolved under generally applicable laws. We added in *Burlington Northern* that "necessary", like "all", should be taken seriously. Only laws that would block the transaction give way. None of the civil rights laws puts any obstacle in the way of Union Pacific's acquisition of the Chicago & North Western. What could possibly make it "necessary" for the railroad to discriminate against employees on account of race, sex, pregnancy, religion, age, or the other topics covered by the antidiscrimination laws? It might have been economically important to cap retirement allowances at 300 (or severance pay at $60,000), but neither of these terms is discriminatory. The 20–day limit for coming back to work, on the other hand, might have been abolished, extended, or waived for pregnant employees, without jeopardizing the transaction. Lifting the civil rights laws cannot have been necessary. Had the Commission said or intimated any such thing—and it did not—the decision would have been arbitrary and capricious. It would be pointless to refer this issue to the Board, therefore, under the doctrine of primary jurisdiction. See *American Train Dispatchers v. ICC,* 26 F.3d 1157 (D.C.Cir.1994).

On the railroad's understanding of § 11341(a), the Board is forever in charge of all legal disputes related to a merger. Is the railroad liable to a brakeman injured by failure of a coupler on a car that came from the acquired corporation? Does an easement on any of the carrier's rights of way survive the merger? Are the employees entitled to a Christmas bonus under the labor agreement? Some of these issues are resolved by arbitration or bargaining, others under state property law or the Safety Appliance Act. See *Norfolk & Western Ry. v. Hiles*, 516 U.S. 400, 116 S.Ct. 890, 134 L.Ed.2d 34 (1996). But if the Union Pacific were right, everything would be up for grabs. Who can tell which of these laws the Commission might have thought incompatible with the merger? Similarly, firms that have passed through bankruptcy reorganization often contend that new questions about their liability should be presented to the bankruptcy court, to determine whether they were resolved by the injunction discharging past liabilities. Both the Supreme Court, see *Rivet v. Regions Bank*, —— U.S. ——, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998), and this court, see *Pettibone Corp. v. Easley*, 935 F.2d 120 (7th Cir.1991), have rebuffed these attempts to extend the bankruptcy court's control after it has confirmed a plan of reorganization. Courts must determine for themselves what consequences the plan has for future litigation. So too with decisions by the Commission or Board approving mergers. Congress gave the agency the power to supersede other laws; use of that power must be respected. But if the Commission or Board approves a merger without directly or by necessary implication using this power, courts should continue to resolve disputes under generally applicable rules of law. None of the relief Harris or Walton seeks would be incompatible with the Commission's order approving the merger. Therefore none of the claims is foreclosed by the Commission's decision.

The judgment of the district court is vacated, and the case is remanded for a decision on the merits.