# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 04-1005

MERRILL E. HALL,

*Plaintiff-Appellant,*

*v.*

NORFOLK SOUTHERN RAILWAY COMPANY,
a corporation, partial successor in
interest to CONSOLIDATED RAIL CORPORATION
doing business as CONRAIL,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 2:02 C 41—**Rudy Lozano** and **Philip P. Simon**, *Judges.*

ARGUED JANUARY 17, 2006—DECIDED NOVEMBER 9, 2006

Before BAUER, ROVNER, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* This case requires us to consider what constitutes a "mistake concerning the identity of the proper party" that will permit an amended pleading to relate back to the date of the original complaint under Federal Rule of Civil Procedure 15(c)(3). Also at issue is the scope of the statutory liability exemption in 49 U.S.C. § 11321 for railroads that participate in consolidation transactions approved by the Surface Transportation Board ("STB").

Merrill Hall alleged in his original complaint that he was injured while working at an Elkhart, Indiana, rail yard. Hall brought his claim under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51 *et seq.*, which makes railroad employers liable to their employees for work-related injuries.

Due to confusion stemming from a transaction in which Hall's employer, Consolidated Rail Corporation ("Conrail"), transferred many of its assets and liabilities to Norfolk Southern Railway Company, Hall named the wrong railroad—Norfolk Southern—as the defendant. Norfolk Southern moved to dismiss because it was not Hall's employer at the time of his alleged injury. Hall then moved to amend his complaint to add Conrail as a defendant, but by that time the statute of limitations had run and any claim against Conrail was time-barred unless it qualified for "relation back" under Rule 15(c)(3).

The district court denied the motion to amend the complaint, holding that Hall's misunderstanding regarding which railroad was liable for his injuries was not a "mistake concerning the identity of the proper party" that would allow relation back under Rule 15(c)(3). The district court then applied the § 11321 exemption to defeat any successor liability on the part of Norfolk Southern, and entered judgment for Norfolk Southern. We affirm.

## I. Background

Hall filed his original complaint on January 30, 2002, three days before the limitations period expired. The original complaint named Norfolk Southern as the sole defendant and stated that at the time of the alleged injury, "Defendant" owned the Elkhart rail yard and employed Hall. Both of these allegations were inaccurate because on the date of the alleged incident, February 2, 1999, Conrail owned the rail yard and employed Hall.

Norfolk Southern assumed ownership and control over the Elkhart rail yard and became Hall's employer only after June 1, 1999, when the transaction by which Norfolk Southern acquired certain assets and liabilities from Conrail was closed.

The terms of the June 1, 1999 transaction were submitted to the STB for approval pursuant to 49 U.S.C. §§ 11321 *et seq.*, and the STB approved those terms. One of the terms provided that Conrail retained liability for all its employees' FELA claims that arose before the transaction's closing date. This included Hall's claim because he alleged he was injured on February 2, 1999, before the June 1 closing date. Norfolk Southern agreed to provide claims services for Conrail such as negotiating settlements and enrolling employees in rehabilitation programs, but Conrail retained liability for FELA claims that arose before June 1, 1999.

Norfolk Southern moved to dismiss Hall's complaint because it was not Hall's employer on the date of his alleged injury; FELA makes railroads liable only to persons "suffering injury while . . . employed by such carrier." 45 U.S.C. § 51. Hall responded by moving to amend his complaint. In the first three numbered paragraphs of his motion to amend, Hall asserted as follows:

> 1. Plaintiff is correct in asserting via affidavit that Plaintiff was a Conrail employee who was injured on February 2, 1999 at the Conrail Elkhart Yard in Elkhart, Indiana.
>
> 2. Plaintiff sued the correct party, NORFOLK SOUTH-ERN RAILWAY COMPANY, as Plaintiff's former employer, Conrail, no longer owns or operates said property nor is responsible for the debts and obligations arising out of said property.
>
> 3. [S]ince the accident, NORFOLK SOUTHERN RAIL-WAY COMPANY assumed control over Conrail's property in the Elkhart, Indiana area where the acci-

dent occurred and NORFOLK SOUTHERN RAILWAY COMPANY assumed responsibility for all debts and obligations relating to that portion of Conrail's assets which NORFOLK SOUTHERN RAILWAY COMPANY acquired, including those of this inquiry.

Hall's motion asked for leave under Rule 15(a) to amend his complaint to allege that Norfolk Southern is a "partial successor in interest to Conrail and has assumed responsibility for all debts and obligations relating to that portion of Conrail assets which NORFOLK SOUTHERN RAILWAY COMPANY acquired, including the Elkhart Yard." He did *not* request leave to add Conrail as a defendant.

Norfolk Southern opposed Hall's motion to amend his complaint because Norfolk had not assumed liability for FELA claims (such as Hall's) that arose before June 1, 1999. Hall then filed a *second* motion to amend in which he sought to name both Norfolk Southern *and* Conrail as defendants. Recognizing that the three-year limitations period for FELA claims had expired,[1] Hall argued that his failure to name Conrail as a defendant earlier was a "mistake concerning the identity of the proper party" under Rule 15(c)(3) such that his second amended complaint should relate back to the date on which he timely filed his original complaint. He characterized the error as "the classic mistake of identity of the correct party and not as the lack of knowledge of the correct party."

The magistrate judge found that Hall's failure to name Conrail as a defendant before the limitations period ran out was not a "mistake" as to "identity" within the meaning of Rule 15(c)(3) and accordingly denied his second motion to

---

[1]  45 U.S.C. § 56.

amend.[2] In his order the magistrate judge incorrectly stated that Hall "filed a complaint in which he allege[d] that his employer at the time, Consolidated Rail Corporation, violated the Federal Employers' Liability Act." The original complaint actually said Norfolk Southern employed Hall and operated the Elkhart rail yard on February 2, 1999, and made no mention of Conrail. The magistrate judge later correctly noted that neither Hall's original complaint nor his first amended complaint named Conrail as a defendant. He then concluded there was "no misnomer or misidentification: Hall made a conscious decision to sue Norfolk instead of his employer."

Hall objected to the magistrate's decision and asked the district court to reverse it. The district judge reviewed the magistrate's order for clear error because in his view the order was nondispositive.[3] He acknowledged that the magistrate judge incorrectly stated "that the initial complaint alleged Conrail was Hall's employer," but found this error harmless because there was "sufficient evidence nonetheless to support [the magistrate judge's] finding that [Hall] was aware that Conrail was [his] employer, but chose to sue only Norfolk." The district judge affirmed the magistrate's ruling, pointing to Hall's first motion to amend—in which Hall clarified that Conrail was his employer at the time of his injury but insisted that Norfolk Southern was nonetheless the proper defendant—as evidence that Hall knew who his employer was but simply

---

[2] Hall's first motion to amend was never ruled on because it was supplanted by his second motion to amend before the first motion became ripe for judgment. The first motion could have been denied as moot upon the filing of the second motion to amend.

[3] *See* FED. R. CIV. P. 72(a) (instructing district judges to review dispositive magistrate decisions de novo and to review nondispositive magistrate decisions for clear error).

misunderstood which company was liable for his alleged injuries.

The litigation proceeded to a summary judgment ruling in favor of Norfolk Southern. The district judge concluded Hall could not hold Norfolk Southern liable under a theory of successor liability because the terms of the transaction between Norfolk Southern and Conrail— which were approved by the STB pursuant to §§ 11321 *et seq.*—specifically assigned liability for pretransaction FELA claims to Conrail. Hall appeals both the denial of his motion to amend and the grant of summary judgment in favor of Norfolk Southern.

## II.  Discussion

### A.  Motion to Amend Complaint under Rule 15(c)(3)

We review the district court's denial of Hall's motion to amend the complaint for abuse of discretion. *United States v. Rogers*, 387 F.3d 921, 925 (7th Cir. 2004); *Robinson v. Sappington*, 351 F.3d 317, 328 (7th Cir. 2003); *Williams v. United States Postal Service*, 873 F.2d 1069, 1072-73 (7th Cir. 1989) (applying abuse of discretion standard to district court's decision on Rule 15(c)(3) relation back issue). Under this standard of review we will not reverse if we merely conclude that we would have reached a different decision if asked to consider the issue in the first instance; rather, "the district court's decision must strike us as fundamentally wrong." *Johnson v. J.B. Hunt Transp., Inc.*, 280 F.3d 1125, 1131 (7th Cir. 2002).

The district court was itself reviewing an order of a magistrate judge, and the parties have a threshold dispute about whether the district court applied the proper standard of review. The Federal Rules of Civil Procedure provide that when parties object to a magistrate judge's order, district judges are to review nondispositive decisions

for clear error and dispositive rulings de novo. FED. R. CIV. P. 72. Hall cites district court decisions from Maine, New York, and New Hampshire for the proposition that when a magistrate judge denies a motion to amend a pleading on grounds of futility, the magistrate has made a dispositive ruling that is therefore subject to de novo review by the district judge. *See Allendale Mut. Ins. Co. v. Rutherford*, 178 F.R.D. 1, 2 (D. Maine 1998); *HCC, Inc. v. RH&M Mach. Co.*, 39 F. Supp. 2d 317, 321-22 (S.D.N.Y. 1999); *Mueller Co. v. U.S. Pipe & Foundry Co.*, 351 F. Supp. 2d 1, 2 (D.N.H. 2005). The thinking reflected in these cases is that by declaring a proposed amendment futile, the magistrate judge has effectively engaged in the Rule 12(b)(6)[4] analysis and has decided the amendment fails to state a claim, thus making the decision dispositive.

This view is not supported by Seventh Circuit authority; the magistrate judge's statute, 28 U.S.C. § 636; or Northern District of Indiana Local Rule 72.1, pertaining to the authority of magistrate judges. The magistrate judge's statute, § 636(b)(1)(A), lists dispositive motions on which a magistrate judge may not issue a final ruling without de novo review by the district judge; motions to amend pleadings are not included. Northern District of Indiana Local Rule 72.1(d) also lists dispositive motions and like-wise omits motions to amend pleadings. The magistrate judge's denial of Hall's motion to amend his complaint did not terminate his existing lawsuit against Norfolk Southern, it merely prevented him from adding Conrail as a defendant. The district judge correctly held that the magistrate judge's denial of Hall's motion to amend his complaint was nondispositive, subject only to review for clear error. *See Wingerter v. Chester Quarry Co.*, 185 F.3d 657, 660 (7th Cir. 1999) ("The magistrate judge was autho-

---

[4] FED. R. CIV. P. 12(b)(6) (permitting motions to dismiss for failure to state a claim on which relief can be granted).

rized to rule on the motion for leave to file the Third Amended Complaint pursuant to 28 U.S.C. § 636(b)(1)(A), which provides that the district court may designate a magistrate judge to hear and determine, with certain exceptions not relevant here, any nondispositive pretrial matter."). We proceed to the merits of Hall's appeal.

Rule 15(c) provides, in relevant part, that amended pleadings may "relate back" as if they were filed on the date the original pleading was filed when:

> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or

> (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, *but for a mistake concerning the identity of the proper party*, the action would have been brought against the party.

FED. R. CIV. P. 15(c)(2) and (3) (emphasis added). The parties agree that Hall's claim against Conrail arose out of the same conduct and occurrence he attempted to set forth in his original complaint and that Conrail had notice of Hall's suit within the Rule 4(m) period and would not be prejudiced in defending against his claim. *See* FED. R. CIV. P. 15(c)(2) and (3)(A). The dispute here centers on whether Hall's original complaint contained a "mistake concerning the identity of the proper party" within the meaning of Rule 15(c)(3).

We have previously held that the "mistake" clause of Rule 15(c)'s "relation back" provision "permits an amendment to relate back only where there has been an error made concerning the identity of the proper party and where that party is chargeable with knowledge of the mistake, but it does not permit relation back where . . . there is a lack of knowledge of the proper party." *Wood v. Worachek*, 616 F.2d 1225, 1229 (7th Cir. 1980). Since *Wood* (which interpreted the prior Rule 15(c)(2)—the "mistake" provision now appears in Rule 15(c)(3)), we have repeatedly reiterated that "relation back" on grounds of "mistake concerning the identity of the proper party" does not apply where the plaintiff simply lacks knowledge of the proper defendant. *King v. One Unknown Fed. Corr. Officer*, 201 F.3d 910, 914 (7th Cir. 2000); *Eison v. McCoy*, 146 F.3d 468, 472 (7th Cir. 1998); *Baskin v. City of Des Plaines*, 138 F.3d 701, 704 (7th Cir. 1998); *Worthington v. Wilson*, 8 F.3d 1253, 1257 (7th Cir. 1993).

Hall attempts to distinguish these cases on the ground that they involved plaintiffs who sued "unknown officers" or "John Doe" defendants. We do not think this distinction makes any difference. The problem the plaintiffs faced in the cases cited above was the same one that confronted Hall here: they did not know who to name as defendants before the limitations periods expired. Whether a plaintiff names a fictitious defendant like "John Doe" because he does not know who harmed him or names an actual—but nonliable—railroad company because he does not know which of two companies is responsible for his injuries, he has not made a "mistake" concerning "identity" within the meaning of Rule 15(c)(3). He simply lacks knowledge of the proper party to sue. It is the plaintiff's responsibility to determine the proper party to sue and to do so before the statute of limitations expires. A plaintiff's ignorance or misunderstanding about who is liable for his injury is not a "mistake" as to the defendant's "identity."

Hall would like us to view his naming of Norfolk Southern as the defendant in his original complaint as nothing more than a "drafting error" and a mere misnaming of the proper defendant (the railroad that employed him on February 2, 1999). We cannot seriously entertain this contention in light of Hall's first motion to amend his complaint. In that motion, Hall made it abundantly clear that he intended to sue Norfolk Southern, not Conrail. His motion did not seek to add Conrail as a defendant and insisted that he "sued the correct party, NORFOLK SOUTHERN RAILWAY COM-PANY," because his "former employer, Conrail, no longer owns or operates [the Elkhart rail yard] nor is responsible for the debts and obligations arising out of said property." At that point in the litigation it was obvious that Hall misunderstood which railroad company was liable for his alleged injuries, but he did not make a "mistake" concerning Conrail's "identity."

Cases from other circuits confirm our view that Hall's misapprehension of which railroad was liable for his injuries is not the type of "mistake" contemplated by Rule 15(c)(3). *See, e.g.*, *Rendall-Speranza v. Nassim*, 107 F.3d 913, 919 (D.C. Cir. 1997) ("In the adversarial system of litigation the plaintiff is responsible for determining who is liable for her injury and for doing so before the statute of limitations runs out; if she later discovers another possible defendant, she may not, merely by invoking Rule 15(c), avoid the consequences of her earlier oversight."); *Wilson v. United States Gov't*, 23 F.3d 559, 563 (1st Cir. 1994) ("Wilson fully intended to sue GEGS, he did so, and GEGS turned out to be the wrong party. We have no doubt that Rule 15(c) is not designed to remedy such mistakes."); *Louisiana-Pacific Corp. v. ASARCO, Inc.*, 5 F.3d 431, 434 (9th Cir. 1993) ("[ASARCO] thought [another company] was the successor-in-interest to IMP and was the proper party to sue. This explanation does not change the fact that ASARCO knew IMP was the party for whose actions it

sought indemnity. There was no mistake of identity [under Rule 15(c)], but rather a conscious choice of whom to sue."); *Rennie v. Omniflight Helicopters, Inc.*, No. 97-1524, 1998 WL 743678, at *2 (4th Cir. Oct. 23, 1998) ("Plaintiffs intended to sue HTS because they believed HTS was the corporate successor to the party which was responsible for maintenance of the . . . helicopters at the time of the 1992 crash. However, Plaintiffs were wrong as to who was the proper party. The remedy provided by Rule 15 does not cover this mistake."). Hall cites no contrary out-of-circuit authority.

Although Hall mentions neither case in his briefs, *Donald v. Cook County Sheriff's Department*, 95 F.3d 548 (7th Cir. 1996), and *Woods v. IUPUI*, 996 F.2d 880 (7th Cir. 1993), arguably contain some support for his expansive definition of a Rule 15(c)(3) "mistake." *Donald* involved a pro se prisoner plaintiff who sued the sheriff's department under the mistaken belief that by doing so he was suing the individual deputies who injured him. *Donald*, 95 F.3d at 557. This court concluded that Rule 15(c) "is intended to be a means for correcting the mistakes of plaintiffs suing official bodies in determining which party is the proper defendant" and permitted the plaintiff to add the individual defendants via Rule 15(c)(3). *Id.* at 560. That holding has limited application, however, because the decision was reached in large part because of Donald's unique impairments as a pro se prisoner who was "precluded from conducting a precomplaint inquiry because of his incarceration." *Id.* at 561. Here, in contrast, Hall has been represented by counsel throughout and obviously was not burdened by litigation impairments comparable to those of pro se prisoners.

In *Woods* the plaintiff was a former state university employee who sued the university for its employees' allegedly unlawful search of his home which turned up marijuana and led to his termination. *Woods*, 996 F.2d

at 883. When the university invoked its Eleventh Amendment immunity, the plaintiff sought to amend his complaint to add the individual university employees as defendants. This court held that the plaintiff's naming of the university instead of its individual employees was a "mistake" within the meaning of Rule 15(c)(3). *Id.* at 887.

*Woods* does lend some support to Hall's position, and unlike *Donald* it cannot be attributed to the extra measure of grace we sometimes accord to incarcerated pro se litigants. But *Woods* appears to be an outlier; our more recent decisions have not followed its reasoning and have instead coalesced around the narrower view of a Rule 15(c)(3) "mistake" which we trace back at least as far as *Wood*, 618 F.2d at 1229. *See, e.g.*, *King*, 201 F.3d at 914 ("We have consistently held that Rule 15(c)(3) does not provide for relation back under circumstances . . . in which the plaintiff fails to identi[f]y the proper party."); *Eison*, 146 F.3d at 472 (same); *Baskin*, 138 F.3d at 704 ("[I]t is well-established . . . that Rule 15(c)(3) 'does not permit relation back where . . . there is a lack of knowledge of the proper party.'" (quoting *Worthington*, 8 F.3d at 1256)). We reaffirm and follow these more recent decisions regarding the scope of Rule 15(c)(3).

## B.  Summary judgment for Norfolk Southern

After the district court denied Hall leave to add Conrail as a defendant, he continued to press his claim against Norfolk Southern on a theory of federal successor liability. The district court disagreed with Hall and granted summary judgment for Norfolk Southern. Our review is de novo. *Healy v. City of Chi.*, 450 F.3d 732, 738 (7th Cir. 2006). We view the record evidence in the light most favorable to Hall, the nonmoving party. *Id.* Summary judgment is appropriately entered where the record shows "that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

Under the doctrine of successor liability, Hall could pursue his FELA claim against Norfolk Southern if: (1) Norfolk Southern had notice of Hall's claim before the completion of its transaction with Conrail, and (2) there is a substantial continuity in the operation of Conrail's railroad business before and after Norfolk Southern's purchase. *See EEOC v. G-K-G, Inc.*, 39 F.3d 740, 747-78 (7th Cir. 1994). Norfolk Southern does not dispute that these two requirements are met, but argues that the terms of its transaction with Conrail and, most importantly, the approval of those terms by the STB, exempt it from liability for FELA claims of former Conrail employees arising before June 1, 1999.

The STB has statutory authority to approve transactions in which railroads combine or consolidate their operations. *See* 49 U.S.C. § 11321(a). If the STB approves the terms of such a transaction, a transacting railroad "is exempt from the antitrust laws and from all other law, including State and municipal law, as necessary to let that rail carrier . . . carry out the transaction." *Id.* The STB reviewed and approved the terms of the June 1, 1999 transaction between Conrail and Norfolk Southern, which included the provision by which Conrail retained liability for its employees' FELA claims arising before the June 1, 1999 closing date. Section 11321(a) therefore exempts Norfolk Southern from any liability for Hall's FELA claim that might attach to it under the doctrine of successor liability. *See Norfolk & W. Ry. Co. v. Amer. Train Dispatchers' Assoc.*, 499 U.S. 117, 129 (1991) ("[T]he immunity provision of [§ 11321] means what it says: A carrier is exempt from *all law* as necessary to carry out an [STB]-

approved transaction.").[5]

Hall objects that the exemption of successor liability for his FELA claim is not truly "necessary" in order to "carry out" the transaction between Norfolk Southern and Conrail. After all, he points out, in addition to retaining its own liability, Conrail agreed to indemnify Norfolk Southern for any successor liabilities that might be imposed on Norfolk. But having a contractual right to seek indemnification is not the same as being immune from a suit altogether. More fundamentally, mere indemnification is not what Norfolk Southern and Conrail bargained for when they agreed on the terms of their deal; the transaction specified that liability for claims like Hall's would not pass to Norfolk Southern but remained with Conrail. Hall's argument contradicts § 11321's plain language: Norfolk Southern is exempt from *all law* as necessary to carry out the terms of the transaction it agreed to with Conrail. One of those terms was no successor liability on the part of Norfolk Southern for preclosing FELA claims. This term plainly could not be "carried out" if successor liability attached. We could allow Hall's successor liability theory against Norfolk Southern to go forward only by ignoring § 11321's clear exemption language or by modifying the terms of the STB-approved agreement. There is, of course, no basis for us to do either.

Finally, Hall relies on *Harris v. Union Pacific Railroad*, 141 F.3d 740 (7th Cir. 1998), for the proposition that Norfolk Southern should only be exempt from a given law

[5] When the Supreme Court decided *Norfolk & Western*, the immunity provisions now contained in 49 U.S.C. § 11321 were found at 49 U.S.C. § 11341 and the transaction-approving function now performed by the STB was then assigned to the Interstate Commerce Commission. We have updated the code section and the name of the federal agency where necessary in this and subsequent quotations.

if the STB expressly stated such an exemption was necessary to carry out the approved transaction. This is a misreading of *Harris* and contradicts the text of § 11321, which contains no requirement of an express finding by the STB that a particular exemption is "necessary." The statute makes the exemption self-executing whenever necessary to carry out an STB-approved transaction. 49 U.S.C. § 11321; *Interstate Commerce Comm'n v. Bd. of Locomotive Eng'rs*, 482 U.S. 270, 298 (1987) (Stevens, J., concurring) (explaining that [§ 11321] "does not condition exemptions on the STB's announcing that a particular exemption is necessary to an approved transaction").

In *Harris*, the Interstate Commerce Commission ("ICC") (predecessor to the STB) had approved Union Pacific Railroad's acquisition of the Chicago and North Western Railway. *Harris*, 141 F.3d at 741. *After* the ICC approved the terms of that acquisition, labor and management of the acquiring railroad entered into a *separate* agreement which was never submitted for the ICC's approval. When two employees later sued Union Pacific alleging that certain provisions in the labor agreement violated several federal laws, Union Pacific claimed that the § 11341 (now § 11321) exemption from such laws was "necessary" for it to carry out its agreement. This court rejected Union Pacific's claim because the labor agreement—as distinct from the acquisition transaction itself—was not an ICC-approved transaction that would trigger § 11341's (now § 11321's) exemption provision. *Harris*, 141 F.3d at 743 ("The return-from-leave condition that plaintiffs say is unlawful was adopted by labor and management on their own after the Commission finished its work."). *Harris* simply does not support Hall's argument that Norfolk is not entitled to the § 11321 exemption because the STB did not expressly and specifically announce that exemption from successor liability was necessary to carry out the approved transaction.

   Accordingly, we conclude that pursuant to § 11321, Norfolk Southern was exempt from federal successor liability for Hall's FELA claim, which arose preclosing. Summary judgment was properly entered in favor of Norfolk Southern.

                                                      AFFIRMED.


A true Copy:

         Teste:


                          _____
                          *Clerk of the United States Court of*
                          *Appeals for the Seventh Circuit*