**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

CSX TRANSPORTATION,
INCORPORATED,

    *Plaintiff-Appellant,*

   v.

TRANSPORTATION COMMUNICATIONS
INTERNATIONAL UNION; UNITED
TRANSPORTATION UNION,

    *Defendants-Appellees.*

No. 06-1414

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Deborah K. Chasanow, District Judge.
(8:05-cv-00419-DKC)

Argued: November 29, 2006

Decided: March 28, 2007

Before MICHAEL and SHEDD, Circuit Judges, and
David A. FABER, Chief United States District Judge
for the Southern District of West Virginia, sitting by designation.

---

Affirmed by published opinion. Judge Faber wrote the opinion, in
which Judge Michael and Judge Shedd joined.

---

## COUNSEL

**ARGUED:** Ronald Maurice Johnson, AKIN, GUMP, STRAUSS,
HAUER & FELD, L.L.P., Washington, D.C., for Appellant. John A.

Edmond, GUERRIERI, EDMOND, CLAYMAN & BARTOS, P.C., Washington, D.C., for Appellees. **ON BRIEF:** Nilufer Loy, AKIN, GUMP, STRAUSS, HAUER & FELD, L.L.P., Washington, D.C., for Appellant. Soye Kim, GUERRIERI, EDMOND, CLAYMAN & BARTOS, P.C., Washington, D.C., for Appellee Transportation Communications International Union.

---

**OPINION**

FABER, Chief District Judge:

Appellant CSX Transportation, Inc., ("CSXT") appeals the district court's grant of summary judgment to appellee Transportation Communications International Union ("TCU") and denial of summary judgment to CSXT in a labor dispute case. CSXT brought suit to vacate several arbitration awards issued by the National Railroad Adjustment Board ("NRAB") in favor of TCU. CSXT argued that the NRAB did not have jurisdiction to resolve those disputes; rather, CSXT claimed that the Surface Transportation Board ("STB") (formerly known as the Interstate Commerce Commission[1] ("ICC")) had exclusive jurisdiction over the matter. We affirm the judgment of the district court.

I.

CSXT is a large railway carrier that is the product of various railroad mergers and consolidations. Pursuant to the Interstate Commerce Act, 49 U.S.C. § 11322(a), the ICC approved these mergers. The Interstate Commerce Act grants the STB the "exclusive authority to examine, condition, and approve proposed mergers and consolidations." *CSX Transp. Inc. v. United Transp. Union*, 86 F.3d 346, 349 (4th Cir. 1996) (quoting *Norfolk & W. Ry. Co. v. Am. Train Dispatchers Ass'n*, 499 U.S. 117, 119 (1991)). Before railway carriers can merge, the Interstate Commerce Act requires them to "establish protective conditions for employees who are adversely affected by a con-

---

[1]The ICC Termination Act of 1995 abolished the ICC and created the STB. The STB then adopted the precedents and regulations of the ICC.

solidation." *Id.* at 348; 49 U.S.C. § 11326. These protective conditions were outlined by the ICC in *New York Dock Railway-Control Brooklyn Eastern District Terminal*, 360 I.C.C. 60 (1979), *aff'd sub nom.*, *New York Dock Railway v. United States*, 609 F.2d 83 (2d Cir. 1979), and are known as the "New York Dock conditions." *See Norfolk & W. Ry. Co.*, 499 U.S. at 120.

In 1990, CSXT decided to capitalize on merger efficiencies by establishing a centralized customer service center in Jacksonville, Florida. Its plan was to transfer certain customer service functions that were performed by clerical employees to the customer service center. Before CSXT could transfer these employees from various transportation service centers to the centralized customer service center, it had to comply with the New York Dock conditions, according to which the creation of the customer service center was a covered transaction. *See New York Dock*, 360 I.C.C. at 77. The New York Dock conditions apply to any "transaction which may cause the dismissal or displacement of any employees, or rearrangement of forces" as a result of a change in a railroad's "operations, services, facilities, or equipment." *Id.*

Article I, Section 4 of the New York Dock conditions requires that a railroad contemplating such changes provide advanced notice to affected employees and their representatives. *Id.* This provision also requires that the railroad carrier and the unions enter into an agreement, known as a New York Dock Implementing Agreement, to govern the covered transaction. *Id.* at 77-78. If the parties fail to reach such an agreement, they are required to submit the dispute to arbitration before the proposed changes can take place. *Id.* at 78.

In accordance with the New York Dock conditions, CSXT served a New York Dock notice on TCU, the union representing the transferred clerical workers. On January 29, 1991, CSXT and TCU consequently entered into a New York Dock Implementing Agreement which provided detailed information on how the transfer would take place. The Implementing Agreement stated that the clerical work transfers were to be progressively phased in over a 36-month period ending in March, 1994. It also provided that work remaining at the transportation service centers and work transferred to the customer service center would continue to be performed under the respective

general collective bargaining agreements already in place. The collective bargaining agreement that applied to the new customer service representative positions created at the customer service center was known as the TCU-SCL Agreement. In addition, the Implementing Agreement expressly incorporated the New York Dock conditions. Article 1, Section 11 of the New York Dock conditions provides for arbitration "in the event a railroad and its employees or their authorized representatives cannot settle any dispute or controversy with respect to the interpretation, application or enforcement" of the New York Dock conditions. *New York Dock*, 360 I.C.C. at 80.

Shortly after CSXT and TCU signed the Implementing Agreement, disputes arose between them about work assignments. TCU asserted that employees not covered by the TCU-SCL Agreement were performing tasks that belonged to the customer service representatives at the customer service center. TCU maintained that this violated the TCU-SCL Agreement, which contains a scope rule that defines the types of positions and types of work covered and provides that "[p]ositions or work covered under this Rule 1 shall not be removed from such coverage except by agreement . . . ." CSXT maintained that the disputed tasks were "shared functions" that had never been exclusively assigned to the clerical employees covered by the TCU-SCL Agreement.

Neither CSXT nor TCU invoked the New York Dock arbitration procedures incorporated into the Implementing Agreement to resolve these disputes. Instead, the parties entered into a comprehensive agreement on December 1, 1994, pursuant to the grievance procedures in the TCU-SCL Agreement, which are governed not by the Interstate Commerce Act, but by the Railway Labor Act. This Agreement resolved the disputes at all but three locations.

In order to resolve their remaining disputes, CSXT and TCU established a Public Law Board, a voluntary alternative dispute resolution forum for disputes referable to the NRAB. 45 U.S.C. § 153 Second. In 1997, neutral Public Law Board member R.E. Dennis sustained TCU's position in five separate decisions. CSXT never sought to have these claims arbitrated pursuant to the New York Dock arbitration procedures incorporated into the Implementing Agreement.

After the Public Law Board arbitrations, TCU continued to file numerous claims against CSXT. In stating its claims, TCU cited both the terms of the Implementing Agreement, as evidence that the work was transferred, as well as the Scope Rule of the TCU-SCL Agreement. When these claims were not resolved through on-the-property grievance procedures, CSXT consolidated the claims into fifty-seven cases that were submitted to the Third Division of the NRAB.[2]

Neutral Arbitrator Edwin Benn determined that in order to prevail, TCU would first have to show that the disputed tasks (1) were performed by someone other than a customer service representative at the customer service center; (2) were performed by a clerical worker at the specific location in dispute before the 1991 Implementing Agreement took effect; and (3) were performed by a customer service representative at the customer service center after the 1991 Implementing Agreement took effect. *CSX Transp., Inc. v. TCU*, Award No. 37227, NRAB Third Div., 15 (2004) (Benn, Arb.). Arbitrator Benn concluded that if TCU succeeded in making all three showings, it would have established that the disputed tasks were transferred to the customer service center by virtue of the Implementing Agreement, and thus fell under the TCU-SCL Agreement. Any work covered by the TCU-SCL Agreement's Scope Rule could not be removed from the customer service representatives at the customer service center without separate agreement. Thus, if employees who were not customer service representatives at the customer service center were performing the covered work without a separate agreement, CSXT would be violating the TCU-SCL Agreement. Using this framework, Arbitrator Benn sustained TCU's claims in eight of ten awards. Several months after these awards were issued, the Carrier members of the NRAB filed a dissent ("Carrier dissent"), claiming that because the disputes could not be resolved without interpreting the Implementing Agreement, the NRAB did not have jurisdiction to adjudicate them.

Following the Benn awards, TCU submitted another claim against CSXT to the Third Division of the NRAB. Arbitrator Elizabeth Wesman served as the neutral arbitrator. After the hearing, but before

---

[2]The NRAB has four "divisions," each of which has jurisdiction over different crafts. The Third Division has jurisdiction over clerical employees, among others. 45 U.S.C § 153 First(h).

issuance of the award, CSXT submitted the Carrier dissent to Wesman and asserted that the NRAB lacked subject matter jurisdiction over the present claim because it, too, required interpretation of the Implementing Agreement. Applying Arbitrator Benn's analysis, Wesman sustained TCU's claim. Without explanation, she also found that the NRAB had jurisdiction over the dispute.

On February 11, 2005, the same day that the Carrier dissent to the Benn awards was filed, CSXT filed a petition in federal court to vacate the Benn awards on the grounds that the NRAB had exceeded its jurisdiction in deciding the claims. TCU filed a counterclaim, seeking to enforce the eight Benn awards it had won. On September 9, 2005, CSXT filed a separate petition in federal court to vacate the Wesman award, also on jurisdictional grounds. The district court consolidated the actions and, with cross motions for summary judgment pending, awarded summary judgment to TCU on February 6, 2006. The district court found that the jurisdictional issue was not one of subject matter jurisdiction, but rather an issue of immunity or personal jurisdiction. *CSX Transp., Inc. v. Transp.-Commc'ns Int'l Union*, 413 F. Supp. 2d 553, 567 (D. Md. 2006). The court then held that the NRAB's jurisdiction was waivable and that CSXT had, indeed, waived its immunity from NRAB adjudication by participating in and even initiating some of the proceedings. *Id.* The district court further held that, waiver aside, the Benn and Wesman arbitrations were within the jurisdiction of the NRAB because they did not actively interpret the Implementing Agreement, but instead "look[ed] at what actually transpired" in terms of whether work was transferred after 1991. *Id.* at 568 n.19. Because the transfer of the clerical functions to the customer service center had long ended, the district court held that the Interstate Commerce Act no longer preempted dispute resolution by the NRAB, in accordance with the Railway Labor Act.

## II.

We review a district court's grant of summary judgment de novo. *Wilson v. Drapner & Goldberg, P.L.L.C.*, 443 F.3d 373, 374 (4th Cir. 2006). The orders of a railway labor arbitration panel constituted under the Railway Labor Act are subject to a unique standard of review that is among the narrowest known to the law. *Norfolk & W. Ry. Co. v. Transp. Commc'n Int'l Union*, 17 F.3d 696, 699 (4th Cir.

1994). Only three grounds exist for setting aside an NRAB award: (1) failure to comply with the requirements of the Railway Labor Act; (2) failure of the NRAB to conform or confine itself to matters within the scope of its jurisdiction; and (3) fraud or corruption by a member of the NRAB division making the order. 45 U.S.C. § 153 First(q).

## III.

The Railway Labor Act grants the NRAB exclusive jurisdiction to resolve "disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions" that at least one of the parties refers to it by petition. 45 U.S.C. § 153 First(i). Such disputes are commonly referred to as "minor disputes" because they contemplate the existence of an already-negotiated collective bargaining agreement and relate to the interpretation of such an agreement. *Consol. Ry. Corp. v. Ry. Labor Executives' Ass'n*, 491 U.S. 299, 303-05 (1989) (citations omitted); *Petersen v. Air Line Pilots Ass'n, Int'l*, 759 F.2d 1161, 1169 (4th Cir. 1985) (noting that "minor disputes" involving rights under the collective bargaining agreement are ordinarily subject to the exclusive jurisdiction of the NRAB).[3] A court may reverse an arbitral decision as in excess of the NRAB's jurisdiction "where the arbitration board's order does not draw its essence from the collective bargaining agreement." *Norfolk & W. Ry. Co.*, 17 F.3d at 700 (internal quotation omitted). Work assignment disputes are generally considered minor disputes that fall within the exclusive jurisdiction of the NRAB. *See e.g.*, *Transp.-Commc'n Employees Union v. Union Pac. R.R.*, 385 U.S. 157, 164 (1966) ("The Adjustment Board has jurisdiction, which petitioner admits, to hear and decide the controversy over the interpretation of the telegraphers' contract with the railroad as it relates to the work assignments."); *Slocum v. Del., Lackawanna & W. R.R. Co.*, 339 U.S. 239, 244 (1950).

---

[3]By contrast, major disputes relate to the formation of collective bargaining agreements. *Consol. Ry. Corp.*, 491 U.S. at 302. The Railway Labor Act prescribes a much lengthier dispute resolution process for major disputes than for minor disputes. *Id.* at 302-04.

The Interstate Commerce Act exempts carriers from antitrust law, and all other law, when necessary to carry out an STB-approved transaction. 49 U.S.C. § 11321(a). This exemption is provided in order to promote "economy and efficiency in interstate transportation by the removal of the burdens of excessive expenditure." *Norfolk & W. Ry. Co.*, 499 U.S. at 132 (quoting *Texas v. United States*, 292 U.S. 522, 534-35 (1934)). The Supreme Court has held that the Railway Labor Act and collective bargaining agreements are included in the definition of "all other law." *Id.* at 131 (applying this principle to override the Railway Labor Act's lengthy and costly major dispute proceedings). The ICC has held that

> the "necessity" predicate is satisfied by a finding that some "law" (whether antitrust, [Railway Labor Act], or a collective bargaining agreement formed pursuant to the [Railway Labor Act]) is an impediment to the approved transaction. In other words, the necessity predicate assures that the exemption is no broader than the barrier which would otherwise stand in the way of implementation.

*CSX Corp.-Control-Chessie-Sys., Inc., & Seaboard Coast Line Indus., Inc.*, 8 I.C.C.2d 715, 721-22 (1992); *see also City of Palestine, Tex. v. United States*, 559 F.2d 408, 414 (5th Cir. 1977) ("Actions taken by the ICC in connection with [approved] transactions but not necessary to them exceed the scope of its authority.").

We have previously held that while the STB is considering whether to approve a transaction subject to its jurisdiction, it has "exclusive authority to resolve . . . objections by unions that a particular proposal to alter a collective bargaining agreement is not necessary to the transaction." *Norfolk & W. Ry. Co. v. Bhd. of R.R. Signalmen*, 164 F.3d 847, 855 (4th Cir. 1998). The Seventh Circuit has recognized, however, that in a post-merger dispute, the STB is not alone in being able to decide when it is necessary to exempt carriers from other laws. *See Harris v. Union Pac. R.R.*, 141 F.3d 740, 743 (7th Cir. 1998). Rather, where the STB has not indicated that it is necessary for a particular law to yield in order for an approved transaction to take place, courts have jurisdiction to decide whether it is necessary for that law to give way. *Id.*

In addition, the STB has recognized that its exclusive jurisdiction pursuant to the Interstate Commerce Act over disputes arising from approved transactions or implementing agreements may not be "timeless and limitless." *Del. & Hudson Ry. Co.-Lease & Trackage Rights Exemption-Springfield Terminal Ry. Co.*, 8 I.C.C.2d 839, 845 (1992).[4] At some point, STB jurisdiction over the interpretation of an implementing agreement ceases, and "the parties will be required to resort to the Railway Labor Act to resolve disputes arising under the collective bargaining agreements then in effect." *Id.* at 845-46; *see also Harris*, 141 F.3d at 744 (rejecting the railroad's understanding of 49 U.S.C. § 11341(a), the predecessor to 49 U.S.C. § 11321(a), that the STB is "forever in charge of all legal disputes related to a merger").

In this case, TCU argues that the disputes here are "minor disputes," because they center on whether CSXT violated the Scope Rule of the TCU-SCL Agreement by allowing employees who are not covered by the TCU-SCL Agreement to perform tasks transferred to the customer service representatives at the customer service center under the Implementing Agreement. By contrast, CSXT argues that the NRAB exceeded its jurisdiction in resolving these disputes because before addressing the Scope Rule and the merits of the work assignment disputes, the arbitrators had to determine whether the tasks had indeed been transferred to the customer service center under the Implementing Agreement. CSXT argues that to do so, they had to interpret the Implementing Agreement, and thus the disputes should have been submitted for arbitration according to the dispute resolution procedures of the New York Dock conditions, rather than those of the Railway Labor Act.

This dispute arises from the tension between the Railway Labor Act's exclusive grant of jurisdiction to the NRAB to resolve minor labor disputes and the Interstate Commerce Act's grant of exclusive authority to the STB to examine, condition, and approve proposed

---

[4]*Delaware & Hudson Railway Co.*, 8 I.C.C.2d at 845, involved labor protective conditions known as the Mendocino Coast conditions, which provide similar dispute resolution procedures to the New York Dock conditions, in addition to virtually identical substantive benefits. *See Del. & Hudson Ry. Co.-Lease & Trackage Rights Exemption - Springfield Terminal Ry. Co.*, 4 I.C.C. 322, 326 (1988).

railway mergers and consolidations. We conclude that CSXT confuses the STB's statutorily granted authority to oversee railway mergers and consolidations with the exclusive jurisdiction to adjudicate all disputes that in any way reference the New York Dock Implementing Agreements that govern mergers and consolidations, even years after the approved transaction has been completed. We hold that because the disputed NRAB decisions drew their essence from the interpretation and enforcement of the collective bargaining agreement between the parties, rather than from the Implementing Agreement, the NRAB had jurisdiction to resolve the claims. *See Norfolk & W. Ry. Co.*, 17 F.3d at 700 (citations omitted).

The claims involved in this case are classic minor disputes over which the NRAB has exclusive jurisdiction, because they relate to the interpretation of a collective bargaining agreement. *See Consol. Ry. Corp.*, 491 U.S. at 303-05. The analysis set forth by Arbitrator Benn, which Arbitrator Wesman followed, relied on the plain terms of the Implementing Agreement only to determine retrospectively whether the disputed tasks were transferred to the customer service center in the first place. The key issue in all of these claims, however, was whether the tasks at issue belonged to the customer service representatives at the customer service center, who are covered by the TCU-SCL Agreement, or whether they could be performed by workers at other locations, who are not covered by the TCU-SCL Agreement. Work assignment disputes such as these have long been recognized as the province of NRAB. *See Transp.-Commc'n Employees Union*, 385 U.S. at 164. Indeed, both parties treated these disputes as such for ten years, until Arbitrator Benn sustained TCU's position in eight awards and CSXT decided to challenge his decision in federal court.

Furthermore, CSXT has not argued that having the STB decide these disputes, rather than the NRAB, is in any way necessary to carrying out its plans to build the customer service center. In fact, it would be difficult to make that argument, given that the transfer of clerical workers to the customer service center was completed in March, 1994. Therefore, allowing the NRAB to resolve these work assignment disputes does not "frustrate the orderly execution of the

terms of the implementing agreement." *Del. & Hudson Ry. Co.*, 8 I.C.C.2d at 845.[5]

IV.

For the foregoing reasons, we affirm the ruling of the district court. Because we hold that the NRAB had jurisdiction to resolve the disputes between CSXT and TCU, we will not reach the second issue presented to us, whether CSXT's objections to NRAB's jurisdiction were waivable.

*AFFIRMED*

---

[5]The amount of time that has passed since the approved transaction was successfully completed militates against our finding that the STB would have jurisdiction over this dispute. Its predecessor, the ICC, as well as the Seventh Circuit, has indicated that the STB's jurisdiction over legal disputes related to a merger should not extend indefinitely. *See id.*; *Harris*, 141 F.3d at 744. In addition, two years before the New York Dock conditions were articulated, the ICC, the predecessor to the STB, registered its reluctance to decide matters such as "certain work assignment disputes" that are "traditionally within the confines of labor-management relations." *Leavens v. Burlington N., Inc.*, 348 I.C.C. 962, 976 (1977) (holding that the ICC should undertake to enforce protective conditions "to the extent that affected employees have suffered harm in violation of the adopted conditions as a result of the transaction . . . other alleged violations of the agreement should be left to the applicable machinery set up under the labor acts . . . ."). As the district court pointed out, were CSXT to prevail, no future work assignment dispute involving workers at the customer service center could be brought before the NRAB, because no dispute would be resolvable without reference to the Implementing Agreement. *CSX Transp., Inc.*, 413 F. Supp. 2d at 569. We agree with the district court that this cannot be the result Congress intended when it endowed the STB with its authority.